O’CONNELL, Justice.
The relator, a public utility operating in Broward County, Florida, petitioned this Court for writ of mandamus directed to the members of the Florida Public Utilities Commission, the members of the Board of County Commissioners of Broward County, and the City of Plantation, Florida.
We issued an alternative writ of mandamus. Thereupon, the City of Plantation, referred to herein as the City, and the Florida Public Utilities Commission, referred to herein as the Commission, filed motions to quash and answers. The relator then filed its motion for peremptory writ notwithstanding the answers and motions of the respondents.
The Board of County Commissioners of Broward County has filed no brief or pleadings in response to the alternative writ.
It is necessary to skeletonize the pertinent facts that provoked this cause.
Following enactment of Chapter 367, F.S. A. by the 1959 Legislature, the Board of County Commissioners of Broward County, on September 25, 1959, adopted an appropriate resolution making said county subject to the provisions of that act, which is called the “Water and Sewer System Regulatory Law.”
Thereafter, relator complied with the requirements of Chapter 367, and the Commission issued to it three certificates of public convenience for operation of sewer and water systems, both within the corporate limits of the City and in the unincorporated area of Broward County.
As a prerequisite to obtaining these certificates the relator filed with the Commission the fair value engineering report required by § 367.12. This report showed that the relator Utility, as of September 25, 1959, had received $1,318,488.33 as contributions in aid of construction. These contributions were included in the engineering report as a part of the fair value of the relator’s property used and useful in the public service. The contributions were made by developers and builders, not by relator’s customers. Only a portion of the contributions related to that part of the relator’s system serving the City.
Thereafter, relator sought and received from the Commission an increase in its rates. This order is the subject of another proceeding now pending in this Court.
The 1963 Legislature then adopted Chapter 63-1028, Chapter 63-1193, and Chapter 63-1805, all of which will be examined in detail later herein.
Subsequently, on September 30, 1963, after the effective date of each of the three Acts, the relator pursuant to § 367.14(2), submitted to the Commission a written notice of proposed increase in rates for sewer service inside and outside the limits of the City, and requested the Commission to set the matter for public hearing pursuant to Chapter 367.
On October 2, 1963, the Commission, by letter, advised the relator that because of the provisions of the three Acts of the 1963 Legislature it (the Commission) would not exercise any jurisdiction over water and sewer rates in Broward County “until there is some judicial determination concerning these many conflicting and confusing Acts of the 1963 Legislature.” By said letter the Commission refused to accept and act on the relator’s proposed increase in rates.
Meanwhile, on October 1, 1963, the City delivered to relator a letter notifying it that, under authority of Chapter 63-1805, the City would, on October 31, 1963, hold a hearing for the purpose of determining *227 rates to be thereafter charged for services rendered by relator in the City.
This proceeding was instituted immediately thereafter.
The first question presented is the standing of relator to bring this proceeding in mandamus in this Court.
We have no difficulty in determining that relator has standing to bring this proceeding; that it may be brought originally in this Court; and that mandamus is a proper remedy. State ex rel. Cochran v. Lewis, 1935, 118 Fla. 536, 159 So. 792, 99 A.L.R. 123; State ex rel. Triay v. Burr, 1920, 79 Fla. 290, 84 So. 61.
Relator contends that the three Acts of the 1963 Legislature, each of which in some way sought to vary the jurisdiction of the Commission over the Utility and to provide a different basis for determining rates to be charged by the Utility, are invalid, and that the Commission still has jurisdiction over it under Chapter 367, F.S.A.
We go then to an examination of the three 1963 Acts and a determination of their validity. We shall consider them separately-
Chapter 63-1028 is a population act passed as a general act of the legislature. It is a comprehensive act that purports to give to the Commission certain jurisdiction, powers and duties over water and sewer utility companies in counties having a population " * * * of not less than 200,000 and not more than 260,000 or not less than 300,000 and not more than 350,000 according to the latest official decennial census =|: * * »
Among other things, this Act provides that in determining the value of property of such a utility used and useful in the pub-lice service, the Commission, for rate-making purposes, shall not include any contributions in aid of construction.
Relator contends that this Act is invalid because: (a) it is a local or special act (passed in guise of a general act) enacted in violation of Section 21, Article III, Florida Constitution, F.S.A., for the reason that it contains no provisions for referendum, and notice of intention was not published as required by said section of the constitution; and (b) because it denies the relator equal protection of the laws and deprives the relator of property without due process of law in violation of both the state and Federal Constitutions, insofar as it denies relator fair return and depreciation on that part of its property contributed to it in aid of construction.
This statute is obviously invalid because it is a special or local act and was not passed in accordance with the requirement of § 21, Art. Ill, Fla.Const., supra.
Reference to the Florida State and Federal Census, 1960, Vol. 3, Fla.Statutes, 1961, pp. 4668 and 4669, reveals that only Palm Beach County, population 228,106, has not less than 200,000 and not more than 260,000 population, and only Broward County, population 333,946, has not less than 300,000 nor more than 350,000 population. Further, the census shows that Orange County, with a population of 263,540, is excluded from the provisions of the statute by the arrangement of the population brackets.
Population Acts, such as the one now under discussion, have been upheld as valid general acts only “ * * * where there is a substantial difference in population, and a statutory classification on a population basis is reasonably related to the purposes to be effected by the act and is grounded on such difference in population and not on mere arbitrary lines of demarcation * * County of Dade v. City of North Miami Beach, Fla.1959, 109 So.2d 362; Crandon v. Hazlett, 1946, 157 Fla. 574, 26 So.2d 638, and Waybright v. Duval County, 1940, 142 Fla. 875, 196 So. 430. A general law which fails to operate uniformly throughout the state is invalid unless it contains a classification predicated upon a reasonable basis. State ex rel. Limpus v. Newell, Fla.1956, 85 So.2d 124.
*228 The respondents furnish no argument or reason showing that the classification on population is reasonably related to the purposes of the Act. Nor is an attempt made to explain why the Act should apply only to counties within the brackets established therein, but not to counties falling between the brackets, or above the highest one. We confess that we are unable to discover any valid basis for the classification.
The statute therefore cannot be said to be a general act and must be considered to be a special or local law. Since no notice of intention was given and no referendum provided for, Chapter 63-1028 violates the requirements of Section 21, Article III, and is therefore invalid.
The second statute to be considered, Chapter 63-1805, is a special act. It gave the City the power to regulate and control all privately owned water and sewer utilities “ * * * which operate under existing franchises with the city of Plantation * * The Act divested the Commission of jurisdiction over any such utility.
The Act gave the City authority to fix rates and provided that, for rate-making purposes, the value of a utilities property used and useful in the public service should not include “contributions in aid of construction in excess of payments made therefor.”
Relator contends that this statute is invalid because: (a) it deprives relator of property without due process of the law; (b) it attempts by vague, ambiguous, incomplete and unclear terms to divest the Commission of jurisdiction after such was granted by general act and jurisdiction was exercised; and (c) it constitutes an unlawful delegation of legislative authority.
In addition, relator contends that the statute is ineffective to give the City jurisdiction over it, because relator is not, and was not at time of passage of the Act, operating under any franchise with the City. Because wc agree with the relator on this point we find it unnecessary to determine the constitutionality of this statute.
As noted above, Chapter 63-1805 gave the City the power to regulate, control and fix rates only for those privately owned water and sewer utilities “ * * * which operate under existing franchises with the city of Plantation * *
The basic question then is whether the Utility was operating under such a franchise on the effective date of the statute.
This Court answered the question in City of Plantation v. Utilities Operating Co., Inc., Fla.1963, 156 So.2d 842, an earlier chapter in the long enduring vendetta between these parties. We said at p. 843 :
“There is no doubt that by conveying to the state Utilities Commission the power to regulate rates, the Legislature pre-empted the pre-existing authority which the City had reserved by the franchise agreement.”
Thus, at the time of passage of Chapter 63-1805, and on its effective date, the relator Utility was not operating under an existing franchise with the City, but rather under certificates of convenience and necessity issued by the Commission puruant to Chapter 367.
We therefore hold that Chapter 63-1805 did not grant the City authority over the relator Utility and that the Commission is still vested with jurisdiction over it under Chapter 367. This holding makes it unnecessary for us to pass on the other attacks made on the statute by the relator.
We come now to the last of the three statutes assailed by the relator, Chapter 63-1193.
This Act provides that the Board of County Commissioners of Broward County may, by adoption of a resolution, remove Broward County from the operation of Chapter 367., Upon taking such action, the Board of County Commissioners assumes the responsibility of regulating and con *229 trolling private water and sewer utilities in that county.
Relator’s attack on this statute is premature. It is not alleged that the Board of County Commissioners has attempted to proceed under the provisions of the statute. The Board may never do so. Relator’s rights cannot he imperiled by the statute until the Board attempts to exercise the powers that are contingently given by the Act. This Court will not determine the validity of a statute unless the rights of a party are shown to be affected. State v. Florida State Turnpike Authority, Fla.1961, 134 So.2d 12; Florida Power Corp. v. Pinellas Utility Board, Fla.1949, 40 So.2d 350, and State ex rel. Atlantic Coast Line Ry. Co. v. State Board of Equalizers, 1922, 84 Fla. 592, 94 So. 681, 30 A.L.R. 362.
By way of summary, we hold that (1) Chapter 63-1028 is invalid because it is a special or local law that was not enacted in accordance with Section 21, Article III, Florida Constitution; (2) that Chapter 63-1805 did not affect the Commission’s jurisdiction over the Utility and did not vest any jurisdiction over the Utility in the City; and (3) we decline to determine the validity of Chapter 63-1193.
For the reasons above expressed, the responses to the alternative writ are found to be insufficient. Accordingly, the peremptory writ is issued, and the Commission is commanded to accept jurisdiction and act on the proposed change of rates of the Utility.
It is so ordered.
DREW, C. J., and THOMAS, ROBERTS, THORNAL, CALDWELL and HOBSON (Ret.), JJ., concur.