308 So.2d 97 (1975)
Paul A. WERNLE, Sr., As Executor of the Estate of Rose M. Dunlop, Deceased, and Paul A. Wernle, Sr., Individually, Appellants,
v.
BELLEMEAD DEVELOPMENT CORPORATION, a Delaware Corporation, Appellee.
Beverly DOPORCYK et al., Appellants,
v.
BELLEMEAD DEVELOPMENT CORPORATION, a Delaware Corporation, Appellee.
Nos. 44373, 44374.
Supreme Court of Florida.
January 29, 1975.
Rehearing Denied March 6, 1975.
*98 J. Compton French of Landis, Graham, French, Husfeld, Sherman & Ford, and C. Allen Watts of Mattingly, Fogle & Watts, De Land, for appellants.
Wayne L. Hogeboom, of Kinsey, Vincent, Pyle & Williams, Daytona Beach, for appellee.
ERVIN (Retired), Justice.
The primary question in these consolidated appeals that invokes our jurisdiction is the constitutionality of Chapter 18,965, Special Acts of Florida, 1937, and Chapter 19,211, General Laws of Florida, 1939,[1] which were upheld by the trial court below.
The Appellants have filed a direct appeal from an order of the Circuit Court in and for Volusia County entitled, "Order Determining That Title to Lands Involved in This Suit is Vested in Plaintiff [Bellemead Development Corp.] and Quieting the Title Thereto and Retaining Jurisdiction for the Court to Determine Whether or not Defendants or any of Them are Entitled to Recover Attorney's Fees and/or Costs and/or Damages from Plaintiff," wherein the trial court upheld the constitutionality of Chapter 19,211, General Laws of 1939 and Chapter 18,965, Special Acts of 1937.
The essential facts of this cause, which arises from a complaint to quiet title to certain described property by Appellee, Bellemead Corporation, against Appellants, Paul Wernle as Executor of the Estate of Rose Dunlop and individually against Paul Wernle and nine of the beneficiaries of that estate, are not in dispute. From 1928 to 1933 numerous tax certificates were issued and sold to the State of Florida, which, when combined, described all the lands in dispute in the instant cause and a considerable amount of other lands.
The 1933 Legislature enacted Chapter 16,252 (Futch Act) which, inter alia, placed a five-year freeze on the transfer or enforcement of state-owned tax certificates, and also allowed payment of any such certificates with bonds or coupons of the original taxing district. The 1937 Legislature enacted Chapter 18,296 (Murphy Act) which provided that as of June 9, 1939, all tax certificates which were more than two years old on the date of passage of the act  June 9, 1937  and which remained unredeemed on June 9, 1939, would automatically be converted to a fee simple title in the State of Florida, as to the lands covered by the certificate.
In 1937, the Legislature passed Chapter 18,965, authorizing the County Commissioners of Volusia County to adjust or cancel the equity of Volusia County in tax certificates covering lands of certain owners who agreed to convey lands to the *99 State of Florida having a value equal to the amount of the taxes so remitted or cancelled, any such lands so to be conveyed to be recommended and approved by the Florida Board of Forestry.
On June 2, 1938, the Board of County Commissioners of Volusia County by resolution directed the Clerk of the Circuit Court to cancel the interest of the county and only the county in a number of specified tax certificates in conformity with the authority given the county under Chapter 18,965. The tax certificates covering the disputed land were only a small portion of all certificates listed. June 15, 1938, the Trustees of Pines Realty Co., a dissolved Florida corporation, conveyed a large amount of land by warranty deed dated June 15, 1938, recorded July 20, 1938, to the State of Florida, Board of Forestry. June 20, 1938, the Trustees of Pines Realty Co. conveyed a large amount of land by warranty deed (recorded June 30, 1938, Deed Book 275, p. 510, Public Records of Volusia County, Florida) to plaintiff-appellee (Bellemead). Included in this deed description was the land here in dispute. On June 23, 1938, Pines Realty Co. quit claimed to the plaintiff-appellee (Bellemead) the same land previously conveyed to plaintiff by its Trustees (said deed having been recorded June 20, 1938).
In 1939 the Legislature enacted Chapter 19,211, Florida Laws, directing the Comptroller to cancel the state taxes contained in the many tax certificates upon which the County of Volusia had already cancelled its interest as a part of the purchase price of other lands acquired by the Board of Forestry for state park and right of way purposes. Subsequently on February 7, 1941 the State of Florida conveyed to Rose Wernle, by Murphy deed, the property described in several outstanding tax certificates. These certificates were never cancelled of record by the Clerk of the Circuit Court or the Comptroller although cancellation of said tax certificates was directed to have been done by legislation (Ch. 19,211, Laws of Florida, 1939). The property in question remained wild and unoccupied by either plaintiff or defendant from time of the deeds described above until filing of the instant quiet title action in Circuit Court which was commenced on November 14, 1969.
In its complaint to quiet title, Appellee urged that the Murphy deed from the State of Florida to Rose Wernle is void in view of Chapter 18,965, Special Laws of 1937, and Chapter 19,211, General Laws of 1939, which directed the cancellation of tax certificates upon land in question, sub judice, assessed in the name of Pines Realty Company, Inc., and Appellee contended, as documented by the record before us, that by resolution pursuant to Chapter 18,965, Laws of Florida, 1937, Volusia County cancelled the tax certificates in exchange for the conveyance of an equivalent amount of land to the Board of Forestry. Appellee stated in its complaint supported by official documentation that prior to the issuance of the Murphy deed the taxes on the questioned land were redeemed and paid by the deed dated June 15, 1938. The applicable statutory provision at the time of the suit, Section 192.21, F.S. 1967, provides:
"No sale or conveyance of real or personal property for nonpayment of taxes shall be held invalid except upon proof that the property was not subject to taxation or that the taxes had been paid prior to the sale, or that the property had been redeemed prior to the execution and delivery of deed based upon certificate issued for nonpayment of taxes."
The trial judge entered a lengthy order on August 23, 1973 determining that the title to the lands in question is vested in Appellee, Bellemead, and quieting title thereto. After expressly delineating the pertinent conveyances, the trial judge determined that the tax deed from the State of Florida by which defendants claim title was void in view of Chapter 18,965, Special Laws of 1937, which authorized the Board of County *100 Commissioners of Volusia County to adjust or cancel taxes upon lands in Volusia County in consideration of conveyance to Florida Board of Forestry other lands at least equal to taxes remitted or cancelled, in view of Chapter 19,211, General Laws of 1939, directing the Comptroller to cancel all State of Florida taxes in tax certificates in all previous years upon lands assessed in the name of Pines Realty Company, Inc. upon which all county or other state taxes are cancelled, in view of the cancellation by resolution of Volusia County Commissioners of the tax certificates, and in view of the fact that prior to the issuance of the tax deed to Wernle, the taxes on the lands in dispute were redeemed and paid by the conveyance from Directors and Trustees of Pines Realty Company to the Florida Board of Forestry.
The trial court concluded that Chapter 19,211, General Laws of 1939, and Chapter 18,965, Special Acts of 1937, are both constitutional and constitute a proper exercise of the legislative function. The trial court relied, inter alia, on Section 192.21, Florida Statutes 1967, above quoted, and determined that the tax deed is void and therefore neither laches nor estoppel apply. Additionally, the trial court stated:
"5. The Defendant, ROSE M. WERNLE and subsequently her estate, have paid the taxes on said property since the issuance of said Tax Deed.
"6. The Plaintiff, BELLEMEAD DEVELOPMENT CORPORATION, has paid into the registry of this Court the sum of One Thousand, Seven Hundred, Eighty-Seven and 12/100 ($1,787.12) Dollars which represents the cost of the Tax Deed and taxes paid by Defendants up to the time of the filing of this suit.
"7. It is clearly established that the land which is the subject of this cause is wild and not in the possession of either the Plaintiff or the Defendants."
Preliminarily, Appellants argue that the trial court erred in sustaining the constitutionality of Chapter 18,965, Special Laws, 1937, and Chapter 19,211, General Laws 1939, because these acts, contend Appellants, violate the prohibition of Article III, Sections 20 and 21 of the Constitution of 1885 and Article III, Section 11(a)(1) and (2), of the 1968 Constitution against the passage of any special or local laws regulating the assessment and collection of taxes or pertaining to the duties of constitutional officers.
Appellants contend that purchasers are not put on notice of special acts of the Legislature such as these, that no provision is made for recording special acts relating to tax titles, and that to uphold such special acts would creat chaos among title examiners. (Note: That the property here involved was purportedly purchased twenty-nine years before this suit was filed.) Appellee responds that even if these questioned acts are to be considered special acts or laws, they are not the type of special laws prohibited by the Florida Constitution. Appellee states that the purpose of the acts was to acquire property to benefit the public as well as return property to the tax rolls after the economic disaster of the depression. Appellee further urges that since the taxes were cancelled by operation of law prior to execution of the Murphy deed to defendants' predecessor in title and prior to June 9, 1939, it is apparent the state had no title to convey. Appellee also points out many problems that would result if the act were held to be a nullity.
Appellants secondly urge that the trial court erred in determining that laches did not apply in this particular case and contend that Appellee should be estopped by its lack of diligence to assert that through some error the tax certificate remained outstanding. Appellee answers that the trial judge here properly considered the relative positions of the parties and cites several decisions of this Court which espouse the principle that a purchaser at a tax sale takes all the risks (McCormick v. Bounetheau (1939), 139 Fla. 461, 190 So. 882.) Appellee also strongly urges that the *101 defendants were not innocent third parties within the meaning of Reed v. Fain (Fla. 1962), 145 So.2d 858, but rather, in effect, are direct parties to the conveyance. Thirdly, Appellants posit that the trial court erred in refusing to find that payment of the taxes by Rose Wernle and her estate for more than twenty years constituted a bar to any action under Section 95.23, F.S. To this contention, Appellee responds citing case authority that the Circuit Court was correct in not applying the statute of limitations when the deed which is alleged to have commenced the running is void ab initio.
Appellants next argue that the lower court erred in refusing to find that the Murphy Act vested color of title in the State on June 9, 1939, as to all lands more than four years delinquent so that the Marketable Record Title Act bars any claim filed more than thirty years. Appellee responds that to the contrary the Murphy Act did not vest color of title in the State on June 9, 1939, within definition of Marketable Record Title Act because, inter alia, a title transaction within definition of Marketable Record Title Act had not occurred.
Finally, Appellants contend that the trial court erred in dismissing the counterclaims of defendants with prejudice but reserving jurisdiction for the purpose of making a determination as to whether the defendants or any of them are entitled to attorney's fees and/or costs and/or damages. Citing, inter alia, Wilson v. Kelley (Fla.App. 1969), 226 So.2d 123, Appellee states that the trial court ruled properly in this regard.
From a careful study of the case and applicable law we conclude that the ends of justice require that we affirm the trial court.
The challenged Acts are constitutional. Their purpose was not to set up local machinery for assessing or collecting taxes contrary to Sections 20 and 21 of Article III of the 1885 Florida Constitution or Section 11(a)(1) and (2), Article III of the 1968 Florida Constitution.
Instead, the main purpose of these statutes was to provide authority for the cancellation (not collection) of delinquent taxes due upon certain privately owned lands in Volusia County in consideration of the owner or owners thereof conveying other of their lands in Volusia County to the Florida Board of Forestry for state park and right of way purposes. There was nothing in the 1885 Constitution which precluded the Legislature from enacting legislation authorizing cancellation of prior delinquent taxes for a consideration to serve some legitimate state or local purpose. This purpose was entirely apart from any local legislation purporting to authorize the general assessment or collection of local ad valorem taxes.
Turning to other contentions of Appellants, we conclude that neither laches nor the statute of limitations nor the Florida Marketable Record Title Act under the circumstances in this case has the effect of barring Appellee's claim to the land in issue.
The trial judge found that the Appellee's predecessors in title in good faith reliance upon the local cancellation act conveyed the lands, as they agreed, to the Forestry Board. And even though there was official failure to follow through on the part of the tax officials, both county and state, and discharge their statutory duty by actually cancelling of record the outstanding tax certificates covering the delinquent taxes, they nevertheless stood equitably cancelled. In other words, the trial court applying equity principles regarded as done that which ought to have been done.
The trial court also found that even though the Appellants became possessed by purchase under the Murphy Act of the uncancelled, void, delinquent tax certificates on Appellee's lands and have also paid for several years subsequent taxes *102 on the land, the same never ripened into any tax title sufficient to divest the Appellee's title. Thus the court did not find under the related circumstances that Appellants had procured valid tax deeds or prosecuted tax foreclosure or had held any tax title of sufficient status or length to ripen into any incontestable title in them by laches, statute of limitation, or under the Marketable Record Title Act. The court has, however, retained jurisdiction for the purpose of making a determination as to whether the Appellants or any of them are entitled to recover of and from the Appellee attorneys fees, costs and/or damages.
From a careful review of the record we find no good reason in law for disturbing the judgment of the trial court. Its application of legal and equitable principles presents no manifest error warranting our correction.
We note especially that the trial court, applying equitable principles, also awarded Appellants all taxes paid on the subject property and reasonable interest at eight per cent per annum on all such taxes, with credit for the amount already paid into the registry of the court.
We reiterate here we are considering initially void tax title claims which have not ripened into an incontestable title in Appellants through laches, the statute of limitations, or the Florida Marketable Record Title Act. Compare: Reed v. Fain, supra, 145 So.2d, at 864, et seq., and Wilson v. Kelley, supra.
Affirmed.
ADKINS, C.J., and ROBERTS, McCAIN and OVERTON, JJ., concur.
BOYD, J., dissents with opinion.
BOYD, Justice (dissenting).
I respectfully dissent.
A careful analysis of the record reveals that the trial court's decision should be reversed.
Appellant Bellemead predicates its claim of title upon two acts of the Florida Legislature: Chapter 18,965, Special Laws, 1937, and Chapter 19,211, General Laws, 1939. In upholding the lower court decision, this Court has sustained the constitutional validity of these Acts. I think both Acts are unconstitutionally defective and that to uphold their validity severely emasculates the Special Acts provisions of the Florida Constitution of 1885, Article III, Sections 20 and 21.
That both of the Acts under consideration are Special Acts is obvious. Chapter 18,965, Special Laws, 1937, is clearly labeled as a special act. Admittedly, Chapter 19,211, General Laws, 1939, was passed under the guise of a general act. However, it has long been recognized that it is the substance of the legislation that is determinative of an act's character. The denomination provided by the Legislature will be ignored where it does not comport with the substance of the law; cases stating this view are legion. Anderson v. Board of Public Instruction for Hillsborough County, 102 Fla. 695, 136 So. 334 (Fla. 1931); State ex rel. Baldwin v. Coleman, 148 Fla. 155, 3 So.2d 802 (Fla. 1941); State of Florida ex rel. Utilities Operating Co., Inc. v. Mason, 172 So.2d 225 (Fla. 1965); Jordan v. State ex rel. Davis, 100 Fla. 494, 129 So. 747 (1930); Stripling v. Thomas, 101 Fla. 1015, 132 So. 824 (1931); Whitney v. Hillsborough County, 99 Fla. 628, 127 So. 486 (Fla. 1930).
Chapter 19,211 operated to cancel tax certificates with respect to one county of the sixty-seven counties in the state: Volusia County. Further, the tax certificates cancelled were assessed against only one entity, Pines Realty Company, Inc., Appellee's predecessor in title. A special law may be described as one that relates to particular persons, purports to operate within classified territory or upon classified persons. See State ex rel. Buford v. Daniel, 87 Fla. 270, 99 So. 804 (1924); State ex rel. Landis v. Harris, 120 Fla. 555, 163 So. 237 (Fla. 1934); State ex rel. *103 Gray v. Stoutamire, 131 Fla. 698, 179 So. 730 (Fla. 1938). Applying this description to Chapter 19,211, one can clearly see that the chapter was a special act.
Having decided that Chapters 18,965 and 19,211 were passed as special acts, it then becomes necessary to scrutinize both chapters to insure that they comply with the mandate of the Florida Constitution that the passage of special acts be limited, both substantively and procedurally.
Before a special act may be enforced, it must be certain that the procedural demands of the Florida Constitution of 1885, Article III, Section 21, have been followed. That provision, in relevant part, requires that:
"No local or special bill shall be passed ... unless notice of intention to apply therefor shall have been published in the manner provided by law where the matter or thing to be affected may be situated, which notice shall be published in the manner provided by law at least thirty days prior to introduction into the Legislature of any such bill. The evidence that such notice has been published shall be established in the Legislature before such bill shall be passed, and such evidence shall be filed or preserved with the bill in the office of the Secretary of State in such manner as the Legislature shall provide, and the fact that such notice was established in the Legislature shall in every case be recited upon the Journals of the Senate and the House of Representatives... ."
Chapter 18,965 was passed in compliance with this mandate. 1937 Journal of the House of Representatives 333; 1937 Journal of the Senate 355. However, Chapter 19,211 in no way complied with constitutional requirement, and for that reason, its constitutionality cannot be sustained.
In addition to the procedural requirement imposed, the Constitution of Florida, 1885, also limited the Legislature's substantive ability to pass special acts. Article III, Section 20, prohibited special laws regulating assessment and collection of taxes pertaining to the duties of constitutional officers.[1]
Both chapters clearly relate to the duties of constitutional officers. Both Chapters were directed to the County Commissioners of Volusia County. The position of County Commissioner was established under Article 8, Section 5.[2] Chapter 19,211 also affected the Comptroller of the State of Florida, another position established by the *104 Constitution, Article IV, Section 20.[3] Finally, under the authority of these chapters, the Volusia County Commission directed the Clerk of the County Court to cancel the tax certificate. The position of Clerk of the County Court was established by the Constitution of 1885, Article VIII, Section 6.[4]
The remaining question is whether these two Chapters, 18,965 and 19,211 relate to the "assessment, and collection of taxes for state and county purposes". The majority would have us believe that these chapters are not related to assessment and collection. The reasoning employed by the majority opinion is that these chapters relate to cancellation and not collection of taxes. This is a distinction that has no existence in reason or in the halls of justice. Notably, the majority cites absolutely no authority for the line it has drawn. Moreover, upon reflection, it is quite obvious that cancellation is inherently and inseverably intertwined with the assessment and collection of taxes. Cancellation nullifies the operative effect of laws designed to foster prompt collection of taxes, for example, the Murphy Act, and renders useless the assessment of land for tax purposes. The inexorable logic that would distinguish between collection and cancellation cannot provide the uniformity in taxation in all parts of the state  the aim of the writers of the Constitution.
For the above reason, all actions of Volusia County and the State of Florida concerning tax certificates were void and any and all conveyances based upon cancellation of tax certificates were invalid.
Because the actions taken by Volusia County and the State under the authority of these acts were meaningless, the State of Florida was at the time of the Murphy deed to Rose Wernle on February 7, 1941, the lawful owner of the property in dispute, and therefore passed valid legal title to Rose Wernle. Her heirs are the Appellants in this litigation. She and her family paid all taxes on the property for almost 29 years from 1941 until these law suits arose to establish clear title on November 14, 1969. Where was Appellee for almost 29 years? Why did it not pay the taxes? Why was it not using or exercising physical possession? Had it felt all that time that Appellants had good title? Only when land value skyrocketed in Florida did it seem worth litigating to try to recover the property. The record shows no answers to these questions. Because the Appellee paid no taxes and ignored the property for so long while Appellants paid taxes under color of title both laches and estoppel should bar Appellee from recovering ownership of the property.
It is common knowledge in this State that countless thousands of parcels of land were sold on tax certificates during the depression years prior to this nation's entry into the Second World War and that statutes still permit owners to lose their real property because of their failure to pay taxes. It is common knowledge that much confusion and frustration arose among title lawyers resulting from uncertainty over the quality of tax deeds for many years after the post war economy greatly reduced the number of tax deeds being issued. Old court records of circuit courts show constant floods of suits in chancery to quiet titles before prospective buyers would conclude purchases.
To end this confusion, the Florida Legislature passed several laws to stabilize ownership of lands sold for taxes. Section *105 192.21 enacted in 1967 and mentioned in the majority opinion was a statute designed to secure such owners from interference such as the claims made by Appellee herein.
Section 95.23[5] provides that persons holding color of title and paying taxes 20 consecutive years have valid title. Appellants held a state deed and paid taxes for almost 29 years. The record shows the land was wild with neither party in actual, physical possession. It seems logical to assume that between one holding color of title who pays taxes for 29 years and one holding color of title without paying taxes the one paying taxes should have the greater claim of possession. Appellants therefore should have the superior claim of possession. The Legislature in a mighty effort approved by this Court adopted the Marketable Record Title Act.[6]
Finally, this majority opinion should not be approved by this Court because it destroys much of the security we have developed for those owning property based upon Murphy deeds and other tax deeds issued decades ago. Many such owners have constructed valuable improvements on their lands totally unmindful of the possible deficiencies of their titles which could arise from conclusions reached in the majority opinion. For example, let us suppose a third party had gone to Volusia County and employed an attorney to examine the title to all or a part of this land. Would he have gone to the ancient minutes of the County Commission to see whether any action had been taken concerning tax certificates on this land? Would the attorney have examined all the special acts of the Legislature to determine whether prior to 1941 some special act had been passed affecting this property? Would an abstract company have done so? Those familiar with Florida title procedures know that no such searches are normally made and to impose such burdens upon title examiners must, of necessity, require increased closing fees for all real property buyers. If a Volusia County special law together with a "general" law which is in fact a special act relating only to Volusia County can undo a 29-year-old ownership based on a deed from the state and continuous payment of taxes, it could happen in any of the other counties. Are there any similar laws relating to Volusia County property known only to God and the keepers of ancient records?
In recent years, title examiners have believed the nightmares of insecurity about old tax deed titles had ended; unfortunately the majority opinion will revive these nightmares of doubt and insecurity. Furthermore, if the majority opinion is allowed to stand, no competent title attorney would ever permit his client to buy property without title insurance. It occurs to me that, if this Court will permit the setting aside of a 29 year old tax deed, a competent *106 lawyer would doubt the sufficiency of the Marketable Record Title Act.
The trial judge made the following specific finding of fact:
"7. It is clearly established that the land which is the subject of this cause is wild and not in the possession of either [Appellee] or [Appellants]."
Section 95.12, Florida Statutes, provides that no action for the recovery of real property shall be maintained unless it appears that the plaintiff (or his predecessor in title) was seized or possessed of the premises in question within seven years prior to the commencement of the action. Considering the judge's finding of fact in light of this statute, I am of the opinion that he should have dismissed this action sua sponte.
For the above reasons, I respectfully dissent.
NOTES
[1] Specifically, these acts in pertinent parts provide: Chapter 18,965, Laws of Florida, 1937:

Section 1. That the Board of County Commissioners of Volusia County, Florida are authorized and empowered to adjust or cancel all taxes upon any land in Volusia County, Florida, except those levied for State purposes, in consideration of the owner of any such lands upon which such taxes are to be adjusted or cancelled, conveying or causing to be conveyed to the Florida Board of Forestry other lands of at least the value of the amount of the taxes so remitted or cancelled; any such lands so to be conveyed to be first recommended and approved by the Florida Board of Forestry.
Chapter 19,211, Laws of Florida, 1939:
Section 1. The Comptroller of the State of Florida is hereby authorized, enabled and directed to cancel all State of Florida Taxes provided in Tax Certificates in all previous years upon lands Assessed in the name of PINES REALTY COMPANY, INC., or claimed by it to June 15th A.D. 1938 lying in the Thomas Fitch Grant in Section Forty-two (42) Township Thirteen, (13) S.R. Thirty-two (32) East, and Section Thirty-nine (39), Township Fourteen (14), S.R. Thirty-two (32) East Volusia County, Florida upon and from which all County and other than State taxes were heretofore cancelled by order of the Board of County Commissioners of Volusia County as a part of the exchange or purchase price of approximately five hundred (500) acres of lands within said Sections deeded to Florida Board Of Forestry for State Park and Right Of Way Purposes By Pine Realty Company, Inc., By Its legal Trustees, dated June 15th 1938 recorded in Deed Book 276 at Page 358 Volusia County, Florida Public Records."
[1] "Section 20. The Legislature shall not pass special or local laws in any of the following enumerated cases: that is to say, regulating the jurisdiction and duties of any class of officers, except municipal officers, or for the punishment of crime or misdemeanor; regulating the practice of courts of justice, except municipal courts; provided for changing venue of civil and criminal cases; granting devorces; changing the names of persons; vacating roads; summoning and empannelling grand and petit juries, and providing for their compensation; for assessment, and collection of taxes for State and county purposes; for opening and conducting elections for State and county officers, and for designating the places of voting; for the sale of real estate belonging to minors, estates of descendents, and of persons laboring under legal disabilities; regulating the fees of officers of the State and county; giving effect to informal or invalid deeds or wills; legitimizing children; providing for the adoption of children; relieving minors from legal disabilities; and for the establishment of ferries."
[2] "Section 5. There shall be one County Commissioner in each of the five County Commissioner's districts in each county, which districts shall be numbered one to five inclusive, and shall be as nearly as possible equal in proportion to population. The Board of County Commissioners in the respective counties shall from time to time fix the boundaries of such districts. Said County Commissioners shall be elected by the qualified electors of said county at the time and place of voting for other county officers, and shall hold office for four years, provided, that the County Commissioners elected from the even numbered districts in 1944 shall serve for two years, those elected in 1944 from the odd numbered districts shall serve for four years, and thereafter the terms shall be for four years; Provided, that Section 11 of Article VIII of this Constitution shall not be affected hereby."
[3] Article IV, Section 20, Florida Constitution of 1885, provides in relevant part: "The Governor shall be assisted by administrative officers as follows: ... Comptroller... ."
[4] "Section 6. Election of county officers; terms.  The Legislature shall provide for the election by the qualified electors in each county of the following County Officers: A Clerk of the Circuit Court, a Sheriff, Constables, a County Assessor of Taxes, a Tax Collector, a Superintendent of Public Instruction and a County Surveyor... ."
[5] "(1) After the lapse of twenty years from the record of any deed or the probate of any will purporting to convey lands no person shall assert any claim to said lands as against the claimants under such deed or will, or their successors in title. (2) After the lapse of twenty years all such deeds or wills shall be deemed valid and effectual for conveying the lands therein described, as against all persons who have not asserted by competent record title an adverse claim."
[6] Chapter 712 provides, in relevant part, that: "Any person having the legal capacity to own land in this state, who, alone or together with his predecessors in title, has been vested with any estate in land of record for thirty years or more, shall have a marketable record title to such estate in said land of record for thirty years or more, shall have a marketable record title to such estate in said land, which shall be free and clear of all claims except the matters set forth as exceptions to marketability in § 712.03. A person shall have a marketable record title when the public records disclosed a title transaction affecting the title to the land which has been of record for not less than thirty years purporting to create such estate either in: (1) The person claiming such estate; or (2) Some other persons from whom, by one or more title transactions, such estate has passed to the person claiming such estate, with nothing appearing of record, in either case, purporting to divest such claimant of the estate claimed."