545 So.2d 1352 (1989)
Leonard SPENCER, Appellant,
v.
STATE of Florida, Appellee.
No. 69883.
Supreme Court of Florida.
June 15, 1989.
*1353 Nelson E. Bailey, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., and Amy Lynn Diem and Joy B. Shearer, Asst. Attys. Gen., West Palm Beach, for appellee.
PER CURIAM.
Leonard Spencer appeals his conviction of two counts of first-degree murder and resulting imposition of two death sentences. He was also convicted and sentenced on four counts of robbery with a firearm, attempted first-degree murder with a firearm, and aggravated assault with a firearm. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Spencer raises one dispositive issue which leaves us no alternative but to reverse for a new trial without consideration of this matter on its merits. That issue concerns the use of the special districting process to select the jurors in this case. Special districts for jury selection are authorized by section 40.015, Florida Statutes (1985), which provides:
(1) In any county having a population exceeding 50,000 according to the last preceding decennial census and one or more locations in addition to the county seat at which the county or circuit court sits and holds jury trials, the chief judge, with approval of a majority of the circuit court judges of the circuit, is authorized to create a jury district for each courthouse location, from which jury lists shall be selected in the manner presently provided by law.
(2) In determining the boundaries of a jury district to serve the court located within the district, the board shall seek to avoid any exclusion of any cognizable group. Each jury district shall include at least 6,000 registered voters.
That statute was implemented in the Fifteenth Judicial Circuit by Administrative Order No. 1.006-1/80 entitled "In re Glades Jury District  Eastern Jury District," which divided the county into two jury districts by establishing a western district at the branch courthouse in Belle Glade and an eastern district at the main courthouse in West Palm Beach. The trial jurors are drawn for each district only from within the geographically identified district lines as established in the administrative order. The stated purpose of the division was to reduce substantial travel time for jurors and alleviate unnecessary expense to the state. In addition to dividing the county into two jury districts, the administrative order further provided that every criminal case will automatically be set for trial in the West Palm Beach district, provided, however, that if the crime is alleged to have occurred in the Glades district, then, at the defendant's option and *1354 request, the trial may be had in the Glades district. The following racial statistics on the voter registration pool from which jurors are selected in Palm Beach County were presented to the trial court and are unrefuted:

 PERCENTAGE
 GEOGRAPHIC AREA TOTAL BLACKS BLACK
 Palm Beach County as a whole 398,797 29,859 7.487
 Western (Belle Glade) Jury District 9,549 4,974 52.080
 Eastern (West Palm Beach) Jury District 389,248 24,885 6.393

Spencer challenges the Palm Beach County jury selection process on the following three grounds: (1) that the division distorts the population mix, resulting in a failure to be able to draw prospective jurors from a fair representative cross-section of the county; (2) the manner in which it is determined that a defendant will be tried in the eastern or western district is a denial of equal protection; and (3) the authorizing statute for jury districts, section 40.015, is unconstitutional under article I, sections 16 and 22; article III, section 11(a)(5) and 11(a)(6); and article V, section 1, of the Florida Constitution.
Spencer's crimes allegedly occurred in the eastern half of the county and his trial was set to take place in the West Palm Beach district. Spencer is black and, at the time of the incident, lived in the Glades district. Prior to trial, Spencer moved for an order requiring the clerk to draw the jury pool from the county at large. The trial court summarily denied the motion. Spencer then moved for his case to be transferred to the Glades district, alleging an equal protection violation. The trial court also denied that motion. Spencer renewed his motion for a countywide jury on two subsequent occasions, including the date of trial. At the time the jury was accepted, counsel for Spencer did so with the understanding that he was not waiving Spencer's claim to be entitled to a jury selected from the entire county.
With regard to his first claim concerning distortion of the population mix, Spencer emphasizes that the Glades district created by the administrative order is 52.08% black while the jury pool for the whole county is comprised of only 7.487% black registered voters. Spencer asserts that the effect of the division removes a significant concentration of black voters from jury duty in the urban eastern half of the county and that the population mix in each of the jury districts fails to draw prospective jurors from a fairly representative cross-section of the county and that these defects result in fundamental error.
In response, the state argues that, if the county as a whole has a percentage of 7.487 black registered voters within the jury pool, the West Palm Beach district's 6.393% of eligible black jurors does not constitute a gross disparity or significant under-representation of the black community. The state further emphasizes that, for Spencer's trial, five out of the sixty potential jurors were black, or 8.3%, and, consequently, Spencer's jury venire was comprised of a percentage of black registered voters higher than that of the entire county. Additionally, the state believes that a jury pool composed of 6.393% black registered voters is reasonably representative of the community made up of 7.487% of black registered voters.
This record does not establish any intentional discriminatory conduct in the adoption of this administrative order and the creation of these jury districts. We must, however, conclude that its effect has removed from the jury pool for the West Palm Beach district a significant concentration of the black population of Palm Beach County, specifically 17% of that population.[*] *1355 We find that, under the admitted facts in this cause, the administrative order creating the districts results in an unconstitutional systematic exclusion of a significant portion of the black population from the jury pool for the West Palm Beach district, from which the jury for this defendant's trial was drawn. We note the Palm Beach County Circuit Court, in State v. Alix Joseph, No. 87-619 CF A02 (Fla. 15th Cir.Ct. Mar. 27, 1987), has similarly ruled on the identical evidence, noting that there could be a constitutional way to divide the county into two districts and still prevent racial discrimination.
Spencer, in his second point, claims that the method of determining whether a defendant will be tried in the eastern or western district is a denial of equal protection. He argues that a person charged with a crime in the West Palm Beach district, which is predominantly white, must stand trial at the courthouse in that district before a jury drawn from that district. On the other hand, a person charged with the same crime which occurred in the Glades district has a choice of which district he or she is tried in. The state responds by asserting that the presumption of discrimination is rebutted by a clear absence of discriminatory intent since the sole purpose of the administrative order in implementing the jury district statute was to eliminate lengthy travel for jurors and that purpose is race neutral. We must reject the argument of the state and find there is a justifiable equal protection claim. The effect of the administrative order is that a black defendant charged with a crime in the predominantly white West Palm Beach district must be tried in that jury district, while a white defendant charged with a crime in the predominantly black western district has a choice of being tried in the predominantly white West Palm Beach district or in the predominantly black Glades district. That procedure of allowing a choice in one district but not in the other violates equal protection rights guaranteed under article I, section 2, of the Florida Constitution, and the sixth and fourteenth amendments of the United States Constitution.
Lastly, we reject Spencer's third claim that section 40.015, Florida Statutes (1985), was unconstitutionally enacted. We agree with the state that section 40.015 is a general law, as we have interpreted that term, under article III, section 11(a)(5) and (6). See Lewis v. Mathis, 345 So.2d 1066 (Fla. 1977); Wernle v. Bellemead Development Corp., 308 So.2d 97 (Fla. 1975); Billings v. City of Orlando, 287 So.2d 316 (Fla. 1973); City of Cape Coral v. GAC Utilities, Inc., 281 So.2d 493 (Fla. 1973).
Further, the statute does not change jurisdiction of courts but only implements the utilization of branch court facilities for purposes of convenience and economy. We find no violation of article V, section 1. Similarly, we find no violation of article I, sections 16 and 22, of the Florida Constitution. We do not read those provisions to mandate that jurors be selected from the whole county but, rather, that the venue of the trial be in the county where the crime was committed. We conclude that the statute may be implemented with an administrative order which establishes districts and jury pools that reflect a true cross-section of the county, with no systematic exclusion of any group in the juror selection process, and that does not otherwise violate equal protection constitutional requirements.
For the reasons expressed, we reverse for a new trial.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[*] Of the 29,859 black registered voters in the county as a whole, 4,974 were registered in the western district and, consequently, not subject to jury duty in the eastern district.