PER CURIAM.
The defendant, Gabriel Garcia, appeals his convictions on charges arising out of an alcohol-related automobile accident. The only point raised by the defendant which merits discussion is his challenge of the Monroe *95 County jury districts. Because the defendant has failed to make out a prima facie ease of racial exclusion, we affirm.
Pursuant to Florida Statutes Section 40.-015, Monroe County has been subdivided into three districts from which jury venires are drawn: the Upper Keys, Middle Keys, and Lower Keys districts. Jury venires for criminal trials are drawn from one of these three districts, depending upon where in Monroe County a defendant is being tried. The defendant in this case was tried in the Upper Keys district, and now challenges his convictions, claiming that the Upper Keys district is not of the same racial composition as Monroe County as a whole, and thus violates Spencer v. State, 545 So.2d 1352 (Fla.1989).[1]
At the hearing on the defendant’s pretrial challenge of the jury districts, the defendant presented evidence consisting of statistics on Monroe County’s registered voters, and testimony from the Supervisor of Elections, the public official who keeps the statistics upon which the defendant relied. See § 98.161(3), Fla.Stat. (1993). The Supervisor of Elections testified repeatedly that the data did not accurately reflect the racial composition of the Monroe County electorate, or of the individual jury districts. He attributed these inaccuracies to the data collection practices which had been employed in registering voters. At the conclusion of the hearing, the trial court found that, in light of the testimony that the statistics presented were inaccurate, the defendant had failed to demonstrate a violation of Spencer. We affirm that ruling.
The issue the defendant raises is an important one, which presents difficult considerations in light of the unique geography of Monroe County, and the public policy underlying the use of jury districts. See Ch. 76-114, at 196, Laws of Fla. (purpose of jury districts is to relieve jurors of burdensome travel incurred in completing jury service). However, by failing to present the trial court with reliable statistical data on the composition of the jury districts, the defendant has not made out a prima facie case of racial exclusion. See Castaneda v. Partida, 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498, 510 (1977) (a grand jury equal protection claim requires showing of the degree of racial underrepresentation); United States v. Rodriguez, 776 F.2d 1509, 1511 (11th Cir.1985) (a prima facie case of a sixth amendment violation involves showing a statistical disparity); Porter v. State, 160 So.2d 104, 107 (Fla.1963) (burden of proof of showing discriminatory exclusion from jury service is upon party challenging the system), cert. denied, 379 U.S. 849, 85 S.Ct. 90, 13 L.Ed.2d 52 (1964). In this case, the trial court was not presented with data upon which it could properly base a ruling in favor of the defendant. Cf. Spencer, 545 So.2d at 1354 (accuracy of statistical data was not questioned). We find no basis in the record before us to upset the trial court’s factual finding regarding the accuracy of the statistics. See Shapiro v. State, 390 So.2d 344, 346 (Fla.1980) (trial court’s findings of fact come to appellate court clothed with presumption of correctness), cert. denied, 450 U.S. 982, 101 S.Ct. 1519, 67 L.Ed.2d 818 (1981).
Affirmed.

. In Spencer, the Supreme Court held that jury districts created under Section 40.015 must "reflect a true cross-section of the county, with no systematic exclusion of any group in the juror selection process.” 545 So.2d at 1355.