**Johnnie Lee WILLIAMS, Petitioner,**

v.

**State of FLORIDA, Respondent.**

**No. 96–8079–CIV–JORDAN.**

United States District Court,
S.D. Florida,
Miami Division.

Aug. 23, 2000.

Johnnie Lee Williams, Polk City, FL, pro se.

Carol Cobourn Asbury, Florida Atty General's Office, West Palm Beach, FL, for State of Florida.

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

JORDAN, District Judge.

In 1983, a jury in Palm Beach County, Florida, found Johnnie Lee Williams guilty of first-degree murder. Mr. Williams

challenges that conviction pursuant to 28 U.S.C. § 2254, arguing that his jury venire was drawn from a pool of potential jurors from which blacks were systematically excluded in violation of his Sixth Amendment and Fourteenth Amendment rights. Mr. Williams also contends that the grand jury that indicted him was unconstitutionally drawn.

## Facts

The judge who previously presided over this case held that the petition presented only questions of state law and that Mr. Williams had not exhausted his state law remedies. *See* Final Judgment [D.E. 10] (Nov. 20, 1996). The Eleventh Circuit reversed and remanded, finding that the petition presented issues of federal constitutional law and that Mr. Williams may have exhausted his state court remedies. *See* Mandate of United States Court of Appeals for the Eleventh Circuit [D.E. 20] (July 23, 1998) (per curiam). The magistrate judge thereafter examined the merits of Mr. Williams' petition and recommended that the petition be denied. *See* Supplemental Report of Magistrate Judge [D.E. 28] (Oct. 8, 1999). Mr. Williams took issue with the report. *See* Petitioner's Objections to Magistrate's Report [D.E. 32] (Nov. 8, 1999). Upon a *de novo* review of the record, I conclude that Mr. Williams' petition for writ of *habeas corpus* must be denied.

Palm Beach County comprises the state's fifteenth judicial district. Six years after Mr. Williams' conviction, the Florida Supreme Court held that the jury selection process in the fifteenth judicial district was unconstitutional. *See Spencer v. Florida*, 545 So.2d 1352, 1353–54 (Fla.1989). The district had been divided into two sub-districts of uneven size. More than half of those eligible for jury duty in the western sub-district were black. In the eastern sub-district, whose population was forty times more numerous, only about 6.4 percent of those eligible to serve on juries were black. A defendant charged with committing a crime in the predominantly white, eastern sub-district was required to be tried in that sub-district by a jury drawn from there. On the other hand, a defendant charged with committing a crime in the predominantly black, western sub-district could choose either sub-district for trial. The Florida Supreme Court held that removing 17 percent of Palm Beach County's black population from jury pools in the eastern sub-district resulted in a failure to "draw prospective jurors from a fairly representative cross-section" of the district. *Id.* at 1354. It further held that allowing only some defendants a choice of venue violated equal protection guarantees of the state and federal constitutions. *See id.* at 1355. In a later case, the Florida Supreme Court held that *Spencer* could apply retroactively where fundamental fairness counseled against strict adherence to the doctrine of finality, such as when the defendant challenged the division of Palm Beach County at the trial and appellate levels. *See Moreland v. Florida*, 582 So.2d 618, 620 (Fla.1991).

## Fair Cross–Section Challenge

Mr. Williams has not presented any evidence regarding the racial composition of the pool from which his jury venire was drawn. Instead, he relies exclusively on *Spencer* to support his petition, maintaining that he should not have to "produc[e] statistical data from the early 1980s concerning the population figures ... in Palm Beach County" because "*Spencer* clearly established the proof required." Petitioner's Objections to Magistrate's Report at 3. Mr. Williams is incorrect. *Spencer* does not set forth the evidence necessary to support his claims. Moreover, the Florida Supreme Court has held that *Spencer* applies retroactively only in a narrow class of cases, *see Moreland*, 582 So.2d at 620, and neither *Spencer*'s rationale nor its holding—to the extent that the decision interprets the United States Constitution—is binding in federal court. *See Mann v. Dugger*, 844 F.2d 1446, 1454 n. 10 (11th Cir.1988); *Freeman v. Georgia*, 599 F.2d 65, 69 (5th Cir.1979).

It should be emphasized at the outset that the Florida Supreme Court did not find in *Spencer* that the division of Palm Beach County was the result of gerrymandering. It is true that the western sub-district had a large black population—indeed the majority of that sub-district was black. *See* 545 So.2d at 1354. Moreover, the Florida Supreme Court noted that a Florida circuit court had found that the county could have been split divided into sub-districts in another way. *See id.* at 1355 (citing *Florida v. Alix Joseph,* No. 87–619–CF–A02 (Fla. 15th Cir.Ct. March 27, 1987)). Thus, while *Spencer* provides some cause for suspicion, it provides no evidence. Indeed, the Florida Supreme Court determined that the *Spencer* record did not "establish any intentional discriminatory conduct" in the sub-districting of Palm Beach County. 545 So.2d at 1354. Without some evidence—for example, testimony or documents describing the rationale for the decision to divide Palm Beach County and the manner in which it was effected—gerrymandering cannot be presumed. *See United States v. Grisham,* 63 F.3d 1074, 1080 (11th Cir.1995); *United States v. Cannady,* 54 F.3d 544, 547 (9th Cir.1995); *United States v. Test,* 550 F.2d 577, 594 (10th Cir.1976); *United States v. Johnson,* 21 F.Supp.2d 329, 336 (S.D.N.Y. 1998); *United States v. Kenny,* 883 F.Supp. 869, 875–76 (E.D.N.Y.1995); *United States v. Garces,* 849 F.Supp. 852, 857 (E.D.N.Y.1994).

▮ Absent evidence of gerrymandering, to make a case that his Sixth Amendment right to a jury drawn from a fair cross-section of the community was violated Mr. Williams must show (1) that blacks were a distinctive group in the community, (2) that representation of blacks in jury venires was not fair and reasonable in relation to the number of blacks eligible for jury duty, and (3) that this underrepresentation was due to the systematic exclusion of blacks in the jury-selection process. *See Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); *Gris-*

*ham,* 63 F.3d at 1078. There is no doubt that blacks are a distinctive group, *see Cunningham v. Zant,* 928 F.2d 1006, 1013 (11th Cir.1991), and there is no reason to question *Spencer*'s holding that the division of Palm Beach County systematically excluded "a significant portion of the black population from the jury pool for the West Palm Beach district...." 545 So.2d at 1355. Mr. Williams fails, however, to establish the second element of his case.

Under Eleventh Circuit precedent, whether the second element is satisfied depends in this case on the absolute disparity between the percentage of those eligible for jury duty in Palm Beach County who are black and the percentage of those qualified to serve as jurors in the western sub-district (where Mr. Williams was tried) who are black. *See Grisham,* 63 F.3d at 1078. If the absolute disparity is 10 percentage points or fewer, then the representation of blacks in the jury pool is not unfair and unreasonable. *See id.* at 1078–79; *United States v. Rodriguez,* 776 F.2d 1509, 1511 (11th Cir.1985); *United States v. Tuttle,* 729 F.2d 1325, 1327 (11th Cir.1984). The application of this test under these facts presents a fundamental problem which has not been resolved by the Eleventh Circuit. *Spencer* states that at an unspecified point in time 7.487 percent of voters registered in Palm Beach County—*i.e.* those people eligible for jury duty—were black. To determine whether Mr. Williams' constitutional rights may have been violated, the percentage of qualified potential jurors in the eastern district of Palm Beach County would have to be compared with the 7.487 figure. Because the disparity would be less than 10 percentage points even if *no* blacks qualified for jury duty, Mr. Williams cannot establish his case under the Eleventh Circuit's absolute disparity test.

The First Circuit and the former Fifth Circuit have acknowledged this problem with the 10–percent absolute disparity test but have not suggested an alternative. *See United States v. Royal,* 174 F.3d 1, 9

n. 6 (1st Cir.1999); *United States v. Butler*, 615 F.2d 685, 686 (5th Cir.1980) (*per curiam*); *United States v. Maskeny*, 609 F.2d 183, 190 (5th Cir.1980). In *Royal*, the First Circuit considered whether another statistical methodology should be used to evaluate fair cross-section challenges and reviewed caselaw from several circuits as well as law review articles. *See* 174 F.3d at 6–11. Ultimately, the First Circuit acknowledged that absolute disparity may be "open to criticism on statistical or logical grounds" but applied it based on the force of precedent. *See id.* at 10.

While this might well be a case in which the absolute disparity test should not be used, the absence of any statistical data other than that reported in *Spencer* makes it just as impossible to apply an alternative methodology as it is to apply the absolute disparity test. To obtain the information necessary for determining whether Mr. Williams' petition was meritorious, I ordered the state to provide the relevant statistics. *See* Order [D.E. 33] at 3 (April 13, 2000). The state responded that the records have been purged in accordance with the state court's routine procedures and no longer exist. *See* Response to Court's Order [D.E. 34] (May 11, 2000). Mr. Williams simultaneously and industrially undertook to locate the necessary records himself. *See* Status Report [D.E. 35] (May 18, 2000). He produced the list of the twelve jurors and two alternates who served at his trial. *See* Notice of Filing [D.E. 38] (May 26, 2000). This list, of course, does not indicate the race of any juror or alternate and says nothing about either the racial composition of the venire from which these individuals were selected or the racial composition of the jury pool from which the venire was drawn.

By relying exclusively on *Spencer*, Mr. Williams in effect asks that I presume that the division of Palm Beach County into two sub-districts *ipso facto* resulted in a violation of his Sixth Amendment rights. Mr. Williams, however, has the burden of establishing each element of his case, which—assuming that gerrymandering did

not occur—requires evidence that blacks were underrepresented on jury venires to a degree that was unfair and unreasonable. *See Berryhill v. Zant*, 858 F.2d 633, 638 (11th Cir.1988). Even if Mr. Williams met this burden, he would not necessarily prevail on his petition. Rather, the state would then be required to demonstrate why the underrepresentation was not unfair or unreasonable. *See id.*

Standing alone, the fact that the data necessary to support his claim is no longer available because 13 years passed between the time of conviction and the time this petition was brought does not shift Mr. Williams' burden to the state. Rather, under the deeply-rooted presumption of regularity, a final judgment is presumed to be not only final but legal. *See Parke v. Raley*, 506 U.S. 20, 35, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992); *Barefoot v. Estelle*, 463 U.S. 880, 887–88, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). In *Parke*, the Supreme Court rejected the argument that where there was no transcript of a plea colloquy, the government should be required to prove that the plea was knowing and voluntary. *See* 506 U.S. at 35, 113 S.Ct. 517. The Court's reasoning is applicable to this case as well:

> The circumstance of a missing or nonexistent record is, we suspect, not atypical, particularly when the prior conviction is several years old.... On collateral review, we think it defies logic to presume from the mere unavailability of a transcript (assuming no allegation that the unavailability is due to governmental misconduct) that the defendant was not advised of his rights....
>
> \*   \*   \*   \*   \*   \*
>
> ... Our precedents make clear ... that even when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant.
>
> ... We have little doubt that serious practical difficulties will confront any party assigned an evidentiary burden in

such circumstances. "The Due Process Clause does not, however, require a State to adopt one procedure over another on the basis that it may produce results more favorable to the accused." *Parke,* 506 U.S. at 31–32, 113 S.Ct. 517 (citations omitted) (quoting *Medina v. California,* 505 U.S. 437, 451, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992)). *Cf. United States v. Arevalo–Tavares,* 210 F.3d 1198, 1200 (10th Cir.2000) (holding that loss of recording of deportation proceeding did not relieve defendant of burden of showing that he did not voluntarily waive right to appeal). Mr. Williams' trial is therefore presumed as a matter of law to have been conducted constitutionally until he demonstrates that there is some reason to believe otherwise. Because he cannot do this on the force of the *Spencer* opinion alone, the presumption of regularity requires denial of his petition on this ground.

### Equal Protection Challenge

Mr. Williams' Fourteenth Amendment equal protection challenge also fails. The test for establishing an equal protection violation is similar to that used for establishing a fair cross-section violation, but the "analyses do differ in one significant respect. To prevail on an equal protection challenge, the defendant must show purposeful discrimination." *Bowen v. Kemp,* 769 F.2d 672, 684 n. 7 (11th Cir. 1985) (citing *Duren,* 439 U.S. at 368 n. 26, 99 S.Ct. 664). *Accord Grisham,* 63 F.3d at 1081 ("[T]he focus of an equal protection claim is whether members of a discrete group have been intentionally denied the opportunity to serve on a jury."). Mr. Williams relies exclusively on *Spencer,* in which the Florida Supreme Court determined that the record did not "establish any intentional discriminatory conduct" in the division of Palm Beach County. 545 So.2d at 1354. Thus, the *Spencer* opinion does not support Mr. Williams' equal protection claim.

### Grand Jury Challenge

Finally, Mr. Williams is not entitled to any relief on his claim that his grand jury was chosen in an unconstitutional matter. First, Mr. Williams' objections to the magistrate judge's supplemental report focus only on the manner in which his petit jury was assembled. Second, even if Mr. Williams has not abandoned the grand jury claim, it lacks merit. Although a defendant convicted in state court can bring an equal protection or fair cross-section challenge to the grand jury that indicted him, *see, e.g., Castaneda v. Partida,* 430 U.S. 482, 494, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), and *Machetti v. Linahan,* 679 F.2d 236, 239 (11th Cir.1982), there is no evidence in the record to support either claim in this case. Unlike his petit jury, the grand jury that indicted Mr. Williams was drawn from the whole of Palm Beach County, and Mr. Williams cannot show a constitutional violation arising from the selection of the grand jury. Nor does the Sixth Amendment require that the grand jury that indicted Mr. Williams and the petit jury that tried him be drawn from the same pool. *See Grisham,* 63 F.3d at 1079–80.

Mr. Williams' petition for a writ of *habeas corpus* is DENIED. This case is CLOSED.