UNITED STATES of America, Plaintiff,

v.

Sylvia IRURITA–RAMIREZ,
et al., Defendants.

No. CR 92–814(A)–GLT.

United States District Court,
C.D. California.

Nov. 24, 1993.

Thomas P. Sleisenger, Asst. U.S. Atty., Narcotics Section, Los Angeles, CA, for plaintiff.

Raymond G. Hernacki, Laguna Beach, CA, Donald C. Randolph, Randolph & Levans, Santa Monica, CA, Malcolm M. Guleserian, Huntington Beach, CA, for Jesus Monsalve.

Mark Beck, Earl Hanson, Los Angeles, CA, for Osbaldo Montalvo–Dominguez.

Michael Garey, Santa Ana, CA, Elliot R. Stanford, Los Angeles, CA, for Mario Saide Aguilera Ramirez.

Morton H. Boren, Los Angeles, CA, for Bernardo Casas.

Ron Cordova, Newport Beach, CA, Terrence P. Goggin, Beverly Hills, CA, James M. Hodges, Long Beach, CA, for Art L. Romo.

Gilberto R. Geilim–Morales, Law Offices of Gilberto R. Geilim–Morales, Los Angeles, CA, for Larry Hustad.

Robert Ramsey, Richard E. Nahigian, Los Angeles, CA, for Jorge Santamaria Rendon.

Angela M. Berry, Los Angeles, CA, for Alfredo Romero.

Errol H. Stambler, Los Angeles, CA, Ralph Bencangey, Beverly Hills, CA, for Jose Solario.

Howard E. Beckler, Hollywood, CA, for Jorge Tapia.

William L. O'Bryan, Los Angeles, CA, for Betty Velez.

Harvey E. Byron, Los Angeles, CA, Stephen M. Garcia, Manhattan Beach, CA, for Jorge Bonilla.

## ORDER ON DEFENDANTS' MOTION OBJECTING TO JURY VENIRE

TAYLOR, District Judge.

This case evaluates General Order 336, the new jury selection plan used in the Central District of California, and concludes it is constitutional.

### I. BACKGROUND

The Central District of California is composed of the counties of Los Angeles, Orange, Riverside, San Bernardino, San Luis Obispo, Santa Barbara, and Ventura. For many years cases in the Central District were tried in Los Angeles before a jury drawn from all seven counties. In the 1980's, Congress established Santa Ana, in Orange County, as an additional place of holding court, and cases from the tri-counties area of Orange, San Bernardino, and Riverside Counties were thereafter eligible for hearing in Santa Ana. In 1992, Congress divided the Central District into three divisions. 28 U.S.C. § 84(c). The Western Division contains Los Angeles, San Luis Obispo, Santa Barbara and Ventura counties; the Southern Division contains Orange County; and the Eastern Division contains Riverside and San Bernardino counties.

On August 11, 1993, the Central District promulgated General Order 336, a new jury selection plan for the District. The plan was approved by the Judicial Council of the Ninth Circuit on August 16, 1993. 28 U.S.C. 1863(a). The plan provides that juries for the federal courthouse in Santa Ana will be drawn from the Southern and Eastern Divisions, and juries for the federal courthouse in Los Angeles will be drawn from the Western Division.

Defendants Aguilera, Camacho, Casas, Hustad, Montalvo–Dominguez and Romo challenge the constitutionality of the plan established under General Order 336. They contend the jury selection procedure deprives them of a jury selected from a fair cross-section of the community, in violation of the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861, the Sixth Amendment, and the equal protection guarantee of the Fifth Amendment's due process clause. Defen-

dants have standing to raise this issue, and the matter is properly before the court for decision.[1]

## II. DISCUSSION

The Jury Selection and Service Act of 1968, 28 U.S.C. § 1861, provides that "all litigants ... shall have the right to grand and petit juries selected at random from a fair cross section of the Community in the *district or division* wherein the court convenes." (emphasis added). By its terms, section 1861 permits juries to be selected from divisions.

■ Courts have repeatedly held that there is no constitutional right to a jury drawn from an entire judicial district. A petit jury may be drawn constitutionally from only one division rather than the whole district. *Ruthenberg v. United States*, 245 U.S. 480, 482, 38 S.Ct. 168, 169, 62 L.Ed. 414 (1918); *United States v. Herbert*, 698 F.2d 981, 984 (9th Cir.1983); *United States v. Cates*, 485 F.2d 26, 29 (1st Cir.1974). *See also, United States v. Young*, 618 F.2d 1281, 1287–88 (8th Cir.1980) (no constitutional right to a jury drawn from an entire district despite differences in the ratio of urban to rural jurors in the district's divisions); *Zicarelli v. Dietz*, 633 F.2d 312, 316–18 (3d Cir. 1980) (no constitutional right to a jury chosen from the entire district despite demographic differences between divisions). Because a jury drawn from the division "community" is constitutional, the issue is whether the division venire (or "master jury wheel") represents a cross section of the community.

■ The right to a fair cross section does not mean proportional representation, or that the venire should be "a perfect mirror of the community." *Swain v. Alabama*, 380 U.S.

202, 205–206, 85 S.Ct. 824, 827–828, 13 L.Ed.2d 759 (1965). Such precision would be impossible.

■ In order to show a prima-facie constitutional violation in the selection of a fair cross section, a defendant must meet the requirements of the three-part test stated in *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Under *Duren*, the defendant must show:

(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which the juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

*Duren*, 439 U.S. at 364, 99 S.Ct. at 668.

The *Duren* test applies to challenges under the Fifth and Sixth amendments as well as those brought under 28 U.S.C. § 1861 *et seq. United States v. Sanchez–Lopez*, 879 F.2d 541, 546–47 (9th Cir.1989); *United States v. Herbert*, 698 F.2d at 984.[2]

### First Duren Requirement: Distinctive Group

The United States Supreme Court and the Ninth Circuit have held that the types of ethnic groups under consideration in this case are distinctive and identifiable groups in the community. *Castaneda v. Partida*, 430 U.S. 482, 495, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977); *Peters v. Kiff*, 407 U.S. at 503, 92 S.Ct. at 2169; *U.S. v. Sanchez–Lopez*, 879 F.2d at 547. The first requirement of the *Duren* test is met.

---

1. The defendants are not limited to objecting only to the disparity within their own ethnic group in the composition of the jury pool. The defendants may attack the constitutionality of the entire process. "[W]hatever his race, a criminal defendant has standing to challenge the system used to select his ... jury, on the ground that it arbitrarily excludes from service the members of any race ..." *Peters v. Kiff*, 407 U.S. 493, 504, 92 S.Ct. 2163, 2169, 33 L.Ed.2d 83 (1972). Therefore, the court will review the constitutionality of the entire plan.

2. An equal protection challenge brought under the Fifth Amendment requires an additional element—discriminatory *purpose. Duren*, 439 U.S. at 368 n. 26, 99 S.Ct. at 670 n. 26. Defendants do not contend the decision to adopt General Order 336 was motivated by a discriminatory purpose, so no Fifth Amendment violation is shown.

## Second Duren Requirement: Absolute Disparity

■ The second part of the *Duren* test requires a statistical evaluation. Defendants must show that the representation of distinctive groups in the venire from which juries are selected is not fair and reasonable in relation to the number of those distinctive groups in the community. *Sanchez–Lopez*, 879 F.2d at 547. Because a general class of all minorities is not recognized as a distinctive group, *United States v. Suttiswad*, 696 F.2d 645, 649 (9th Cir.1982), each distinctive group must be considered separately, comparing the percentage of the group in the community to the percentage of the group in the venire.

■ The Ninth Circuit uses an *absolute* disparity analysis to determine the underrepresentation of a particular group in the jury venire. *Sanchez–Lopez*, 879 F.2d at 547. *See also, United States v. Suttiswad*, 696 F.2d at 648–49; *United States v. Armstrong*, 621 F.2d 951, 955–56 (9th Cir.1980); *United States v. Kleifgen*, 557 F.2d 1293, 1296–97 (9th Cir.1977); *United States v. Potter*, 552 F.2d 901, 905–06 (9th Cir.1977). An absolute disparity is calculated by "taking the percentage of the group at issue in the total population and subtracting from it the percentage of that group that is represented on the master jury wheel." *Sanchez–Lopez*, 879 F.2d at 547.[3]

■ The law requires that jurors must be United States citizens and at least 18 years of age. 28 U.S.C. § 1865(b)(1) and § 1861. In compiling statistics on the percentage numbers of such juror-eligible persons, the court makes use of the most reliable information available. The parties and the courts may use total population figures if no more accurate jury-eligible population statistics are at hand. *U.S. v. Sanchez–Lopez*, 879 F.2d at 547. However, if more precise jury-

eligible statistics are available, as they are here, the court will use them. *See*, for example, *Duren v. Missouri*, 439 U.S. at 365, 99 S.Ct. at 669; *U.S. v. Suttiswad*, 696 F.2d at 648 n. 3.

■ There are several sources of reliable population statistics provided by the parties for calculating absolute disparity. 1990 U.S. Census figures set forth the total population by ethnic group, but without adjustment for age or citizenship. Additionally, there are partially-adjusted 1990 Census Bureau figures, stating the ethnic percentage of jury age (over 18) persons. Finally, the California State Census Data Center maintains adjusted statistics of the jury-eligible group: citizens who are at least 18 years of age. The data from the Census Data Center most correctly reflects the jury-eligible population, and is here used by the court.

Additionally, there are two sources of reliable statistics for the ethnic make-up of the jury venire. The Central District maintains a demographic breakdown of the master jury wheel in use between August 1993 and March 1994. Additionally the district's Jury Commissioner conducted a 1993 questionnaire of the venire. Both sources are considered by the court to establish a disparity range.

Using this best information available, the absolute disparity range calculations are as shown in the Appendix. Based on this information, the absolute disparity ranges in the Southern–Eastern Divisions jury venire under General Order 336 are from 0.3 to 1.0% for Blacks, from negative 0.7[4] to 0.2% for Asians, and from 2.2 to 3.1% for Hispanics. In the Western Division the absolute disparity ranges under General Order 336 are from negative 0.1 to 0.2% for Blacks, from negative 0.2 to 0.2% for Asians, and from 4.4 to 4.7% for Hispanics.

**3.** By contrast, a *comparative* disparity is determined by dividing the absolute disparity percentage by the percentage of the group in the community. For example, if a certain ethnic group is 10% of the population, but only 5% of the jury wheel, the absolute disparity would be 5 percentage points, but the comparative disparity would be 50%. The Ninth Circuit has rejected use of a comparative disparity analysis because it exag-

gerates the effect of any deviation between the representation of the group at issue in the overall population and its representation in the master jury wheel. *Sanchez–Lopez*, 879 F.2d at 548.

**4.** A "negative" number indicates an *over*-representation for the particular group.

The Ninth Circuit has consistently held that absolute disparities below 7.7 percent are insubstantial and constitutionally permissible. *Sanchez–Lopez,* 879 F.2d at 548 (2.05%); *United States v. Kleifgen,* 557 F.2d at 1297 (2.9 percent for Blacks and 4.4 percent for males); *United States v. Suttiswad,* 696 F.2d at 648 (2.8 percent for Blacks, 4.7 percent for Asians, 7.7 percent for Hispanics); *United States v. Armstrong,* 621 F.2d at 956 (2.8%); *United States v. Potter,* 552 F.2d at 906 (2.7%).

Courts outside the Ninth Circuit have reached similar conclusions. For example, the Eleventh Circuit has consistently found a *prima facie* case of discrimination is not shown by an absolute discrepancy figure below 10%. *United States v. Rodriguez,* 776 F.2d 1509, 1511 (11th Cir.1985) (collecting cases).

As a general rule, courts have held that an absolute disparity on the order of twenty percentage points violates the second part of the *Duren* test. *Turner v. Fouche,* 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970) (23%); *Gibson v. Zant,* 705 F.2d 1543, 1547 (11th Cir.1983) (20% and 38%); *Machetti v. Linahan,* 679 F.2d 236, 240–41 (11th Cir. 1982) (36% and 42%).

The percentages shown in this case demonstrate that there is no constitutionally significant absolute disparity for Blacks, Asians, or Hispanics in the jury selection process in either the Western or Southern–Eastern divisions. None of the absolute disparities exceed 4.7%. The second *Duren* requirement is not met, and the jury venire composition under General Order 336 is constitutional.

Since absolute disparities under General Order 336 are within constitutional limits, the court does not reach an inquiry under the third *Duren* requirement as to whether there has been systematic exclusion.

## III. *DISPOSITION*

For the reasons stated above, Defendants' motion is DENIED.

## APPENDIX

### Southern and Eastern Division: Absolute Disparity in Percentage Points

|  | Black | Asian | Hispanic |
| --- | --- | --- | --- |
| Jury-eligible population (Census Data Center) | 4.3% | 4.2% | 13.9% |
| Master jury wheel | 3.3 | 4.0 | 11.7 |
| Jury Commissioner questionnaire | 4.0 | 4.9 | 10.8 |
| Absolute disparity range | 0.3 to 1.0 | −0.7 to 0.2 | 2.2 to 3.1 |
| (Population figures not used) |  |  |  |
| 1990 census (unadjusted) | 4.4 | 7.0 | 25.0 |
| Age-adjusted census | 4.0 | 6.7 | 21.8 |

### Western Division: Absolute Disparity in Percentage Points

|  | Black | Asian | Hispanic |
| --- | --- | --- | --- |
| Jury-eligible population (Census Data Center) | 12.0% | 6.8% | 19.0% |
| Master jury wheel | 11.8 | 7.0 | 14.3 |
| Jury Commissioner questionnaire | 12.1 | 6.6 | 14.6 |
| Absolute disparity range | −0.1 to 0.2 | −0.2 to 0.2 | 4.4 to 4.7 |
| (Population figures not used) |  |  |  |
| 1990 census (unadjusted) | 10.1 | 10.0 | 36.1 |
| Age-adjusted census | 9.8 | 10.0 | 31.8 |