UNITED STATES of America,

v.

**Frank KENNY, Christopher Peres, a/k/a "Christopher Norman," Michael Victor, and Louis Deciantis, Defendants.**

No. 94–CR–702 (DRH).

United States District Court,
E.D. New York.

April 27, 1995.

Zachary W. Carter, U.S. Atty. by Leonard Lato, Garden City, NY, for U.S.

Lawrence Hochheiser, New York City, for Kenny.

Anthony A. Capetola, Williston Park, NY, for Peres.

Ronald Russo, New York City, for Victor.

Joseph Mure, Jr., Brooklyn, NY, for Deciantis.

HURLEY, District Judge.

In the above-referenced prosecution, Defendants are charged with conspiracy to import, distribute, and possess with intent to distribute marihuana; distribution of marihuana; and possession with intent to distribute marihuana. Defendants Kenny, Peres, and Deciantis are also charged with certain weapons violations. Currently before the Court are various motions for pre-trial relief, including dismissal of the Indictment, severance, particularization, suppression of certain evidence, and discovery. Each of these categories of motions is addressed separately below.

## Discussion

### I. Motions to Dismiss

Defendants have moved to dismiss the Indictment on three grounds: first, that the plan by which juries are selected in this District violates their constitutional and statutory rights; secondly, that the Government engaged in outrageous conduct that should bar further prosecution; and, finally, that the Indictment was based upon insufficient evidence. For the reasons set forth below, each of these motions is denied.

### A. Jury Selection Plan

The Court first considers Defendants' motions to dismiss the Indictment on the ground that the Eastern District Jury Selection Plan violates the Fifth and Sixth Amendments of the United States Constitution, as well as the Jury Selection and Service Act (the "Act"), 28 U.S.C. §§ 1861–69.[1]

---

1. The Government contends that only Defendant Victor has timely moved for relief on this ground.

Although it appears that at least two of the remaining Defendants, Defendants Deciantis and

The Jury Selection Plan for the Eastern District of New York (the "Plan") establishes two master jury wheels from which names of prospective jurors are selected: the "Brooklyn Wheel," which draws names from all five counties within the District, and which provides jurors for trials at the Brooklyn courthouse; and the "Long Island Wheel," which draws names from only Nassau and Suffolk counties, and provides jurors for the courthouses in the Long Island Division. Defendants' Indictment was returned by a grand jury selected from the Long Island Wheel.

Essentially, Defendants contend that this Plan violates the Constitution and the Act, in that

> [i]t overrepresents the predominantly white suburban population in the jury selection process by requiring Long Island residents to serve at both the Brooklyn and Long Island courthouses, while it underrepresents the District's non-white urban population by excluding New York City residents from sitting at the Long Island courthouses. In effect, the Plan "doublecounts" the District's largely white suburban population in the District's jury selection process, and therefore undercounts the non-white population.

(Victor Mem. at 4.) At least two courts in the Eastern District have rejected similar challenges to the Eastern District Plan, *see United States v. Garces,* 849 F.Supp. 852 (E.D.N.Y.1994); *United States v. Macchia,* 844 F.Supp. 920 (E.D.N.Y.1994), and, in keeping with the rationale of these cases, the Court likewise denies Defendants' challenges to the Plan.

### 1. Sixth Amendment

■ First, the Court considers the Defendants' contention that the Plan violates the "fair cross-section" requirement of the Sixth Amendment. To establish a *prima facie* case that a jury selection process violates this requirement, a defendant must demonstrate that: (1) the allegedly excluded group is distinctive; (2) representation of this group in the venire is not fair and reasonable in relation to the population in the community; and (3) the underrepresentation is due to a systematic exclusion in the process. *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979).

■ Defendants have clearly satisfied the first requirement of this test, in that the groups claimed to be excluded, *viz.* blacks and Hispanics, are each distinctive in the community. *See United States v. Jackman,* 46 F.3d 1240, 1246 (2d Cir.1995). The Court is not convinced, however, that the second requirement has also been satisfied, for Defendants have not demonstrated that the representation of these distinctive groups in the venire was unreasonable "in relation to the population *in the community.*" *Duren,* 439 U.S. at 364, 99 S.Ct. at 668 (emphasis added).

■ Although the *Duren* court did not clearly define the term "community," there appears to be no dispute that, generally, the term refers to the district—or division, when a district has been so divided—where the trial is to be held. (*See* Victor Mem. at 15.) Applying this general rule to the facts of this case, it would appear that the Long Island Division—which includes only Nassau and Suffolk counties—is the relevant "community" for purposes of jury selection.

■ Defendants contend, however, that when the manner in which a division is drawn violates legislative intent or the strictures of the Constitution, such a division cannot be regarded as a "community" for juror selection purposes. (*See id.* citing *Davis v. Warden, Joliet Correctional Institution at Stateville,* 867 F.2d 1003, 1008–13 (7th Cir.), *cert. denied,* 493 U.S. 920, 110 S.Ct. 285, 107 L.Ed.2d 264 (1989).) More specifically, Defendants contend that creation of a Long Island Division that permits the "doublecounting" of Nassau and Suffolk county residents violates both legislative intent and the Constitution. As such, Defendants contend, the Long Island Division cannot represent a "community" for purposes of the *Duren* test; and in the absence of a properly drawn division, the only "community" from

---

Peres, made timely requests to join in Defendant Victor's motion (*see* Mure July 20, 1994 Letter; Capetola July 19, 1994 Letter), the Court need

not resolve this issue, in that the Court finds that the grand jury composition in this case violated neither the Constitution nor the Act.

which jurors may be drawn is the district as a whole. (*Id.* at 14–15.)

To properly assess this claim, the Court must determine whether the manner in which the Long Island Division has been drawn violates either legislative intent or constitutional requirements. First, the Court examines Defendants' contention that the creation of the Long Island Division violates legislative intent, in that the Division is not authorized by the Jury Selection and Service Act. In support of this position, Defendants cite two sections of the Act. First, Defendants rely upon the Act's definition of "division":

> in a judicial district where there are no statutory divisions, ["division" shall mean] such counties ... surrounding the places where court is held as the district court plan shall determine: *Provided,* That each county ... shall be included in some such division.

28 U.S.C. § 1869(e). Secondly, Defendants rely upon the "proportionality requirement" of the Act, which provides, in relevant part, that the procedures for selecting jurors

> shall ensure that each county ... within the ... division is substantially proportionally represented in the master jury wheel for that judicial district, division, or combination of divisions.

*Id.* at § 1863(b)(3).

■ Defendants assert that these Sections, when read in conjunction, "strongly impl[y] that counties are not to be overincluded (i.e., simultaneously included in more than one division)." (Victor Mem. at 15–16.) The Court, however, finds no such requirement in these Sections. Instead, the Act merely requires that individuals residing in each of the counties in a district have an opportunity to serve as jurors, and that, within each juror wheel, there is proportional representation of the counties included within that wheel. Defendants have not demonstrated that these requirements are violated by the creation of the Long Island Division, for Defendants concede that each of the Dis-

trict's counties is represented in at least one of the District's wheels, and Defendants do not contend that either of two counties that are included within the Long Island Division are disproportionately represented. As such, Defendants' statutory argument must fail.

■ The Court also rejects Defendants' argument that the manner in which the Division is drawn violates "constitutional principles of fairness and inclusiveness." (Victor Mem. at 15.) As the *Garces* and *Macchia* courts correctly note, there is no constitutional requirement that a jury be drawn from an entire judicial district. *Garces,* 849 F.Supp. at 857, 860 (collecting cases); *Macchia,* 844 F.Supp. at 921; *see also Ruthenberg v. United States,* 245 U.S. 480, 482, 38 S.Ct. 168, 169, 62 L.Ed. 414 (1918). Indeed, courts have consistently held that, so long as a division is not "gerrymandered," it will withstand constitutional scrutiny, even if the division differs from the district as a whole in terms of its racial or socio-economic composition. *United States v. Gottfried,* 165 F.2d 360, 364 (2d Cir.) ("There are probably no districts in the Union, which can be divided without disclosing in the sections different racial, religious, political, social or economic percentages. To demand that they shall not, would be a fantastic pedantry which would serve no purpose...."), *cert. denied,* 333 U.S. 860, 68 S.Ct. 738, 92 L.Ed. 1139 (1948); *see also United States v. Young,* 618 F.2d 1281, 1287–88 (8th Cir.), *cert. denied,* 449 U.S. 844, 101 S.Ct. 126, 66 L.Ed.2d 52 (1980); *Zicarelli v. Dietz,* 633 F.2d 312, 316–18 (3d Cir.1980), *cert. denied,* 449 U.S. 1083, 101 S.Ct. 868, 66 L.Ed.2d 807 (1981). As the Long Island Division is merely drawn along county lines in the proximity of the Long Island courthouses, and is not "gerrymandered" in any fashion, *see United States v. Pleier,* 849 F.Supp. 1321, 1326 (D.Alaska 1994); *United States v. Irurita–Ramirez,* 838 F.Supp. 1385, 1387 (C.D.Cal.1993), Defendants' constitutional argument likewise fails. Defendants have thus failed to establish the second requirement of the *Duren* "fair cross-section" test,[2] and, as such, their motions to

---

2. Therefore, the Court need not consider whether Defendants have satisfied the third requirement of the *Duren* test.

dismiss the Indictment on Sixth Amendment grounds is denied.[3]

### 2. Fifth Amendment

■ The Court next considers Defendants' contention that the Plan violates the strictures of the Fifth Amendment. To establish a *prima facie* case that a jury selection process violates the equal protection clause of the Fifth Amendment, a defendant must demonstrate that a cognizable group is substantially underrepresented and that the selection process is not racially neutral. *Alston v. Manson*, 791 F.2d 255, 257 (2d Cir. 1986) (citing *Castaneda v. Partida*, 430 U.S. 482, 494–95, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977)), *cert. denied*, 479 U.S. 1084, 107 S.Ct. 1285, 94 L.Ed.2d 143 (1987). To establish a "substantial underrepresentation," a defendant must compare the proportion of the cognizable group "in the total population" with the proportion of such group that was called to serve as jurors. *Castaneda*, 430 U.S. at 494, 97 S.Ct. at 1280.

■ As noted above, there is no constitutional right to a jury drawn from an entire district. *See supra* at 7. Therefore, the "total population" that must be used to determine whether there is a substantial underrepresentation is the population of those counties in the Long Island Division, rather than the population in the District as a whole. *See Macchia*, 844 F.Supp. at 921; *Garces*, 849 F.Supp. at 856–58; *see also Irurita–Ramirez*, 838 F.Supp. at 1387. Defendants have failed to allege that any cognizable groups in the Long Island Division's grand jury pool are substantially underrepresented as compared to their proportion in Nassau and Suffolk counties. As such, their motion to dismiss the Indictment under the Fifth Amendment is likewise denied.[4]

### B. Outrageous Government Conduct

Next, the Court considers the second asserted ground for dismissal of the Indictment: outrageous government conduct. Defendant Kenny contends that the egregious manner in which the Government conducted his interrogation should bar his prosecution. (*See* Kenny Mem. at 5–7.) The Court will conduct a hearing on this motion on May 1, 1995, at which time the Court will also consider, *inter alia*, Defendant Kenny's motion to suppress the post-arrest statements that were allegedly made during the interrogation. *See infra* at 876–877.

### C. Sufficiency of the Evidence

Finally, the Court considers Defendant Peres's motion to dismiss the Indictment on the ground that it is insufficient as a matter of law, in that "the discovery provided by the Government raises substantial questions as to whether the Grand Jury had before it evidence competent to" indict. (Peres Mem. at 3–4.) Defendant Peres further contends that questions regarding the sufficiency of the evidence "can be answered only by an in camera inspection of the Grand Jury minutes." (*Id.*) Defendant Peres thus requests an order directing the Government to produce the grand jury minutes for *in camera* review by this Court.[5]

---

3. Defendants also contend that the Indictment should be dismissed on the ground that the creation of the Long Island Division violates the fair cross section requirement of the Jury Selection and Service Act. However, "[t]he test for a prima facie case under the sixth amendment is also applied in determining whether a motion under the Act states 'facts which, if true, would constitute a substantial failure to comply with' the fair cross section requirement of the Act." *United States v. LaChance*, 788 F.2d 856, 864 (2d Cir.) (citations omitted), *cert. denied*, 479 U.S. 883, 107 S.Ct. 271, 93 L.Ed.2d 248 (1986). As Defendants have failed to establish a *prima facie* case under the Sixth Amendment, their motion to dismiss the Indictment on this statutory ground is likewise denied.

4. As the procedure for selecting petit jurors in the Long Island Division is identical to that used for selecting grand jurors, Defendants' motions for a petit jury drawn from the entire district is also denied.

The Court also rejects Defendants' request for a hearing with regard to their motion challenging the composition of the grand jury, as Defendants have failed to submit facts which, if true, would constitute a substantial failure to comply with the provisions of the Act. *See* 28 U.S.C. § 1867(d).

5. Defendant Peres also suggests that, during this *in camera* review, the Court should "determine whether any portions of the Grand Jury minutes may be provided to him to aid in preparing for his defense." (Peres Mem. at 2.)

It is well established, however, that an indictment that is valid on its face may not be challenged on the ground that it is based on inadequate evidence. *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *United States v. Casamento*, 887 F.2d 1141, 1182 (2d Cir.1989) (citations omitted), *cert. denied*, 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990). Moreover, "[g]rand jury proceedings carry a '"presumption of regularity,"'" *United States v. Torres*, 901 F.2d 205, 233 (2d Cir.) (citations omitted), *cert. denied*, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990), and, therefore, "[a] review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct" that would overcome the presumption of regularity. *See id.* (citation omitted). As Defendant Peres has failed to submit any allegations of government misconduct with respect to the grand jury proceedings, the Court declines to conduct an inspection of the grand jury minutes, and, in the absence of any further support for his position, his motion to dismiss the Indictment is denied.

## II. *Severance*

The second category of motions advanced by the Defendants request severance of their trials from that of their co-defendants. First, Defendant Peres moves for severance on the ground that his joinder in the Indictment was inappropriate under Federal Rule of Criminal Procedure 8(b). Secondly, both Defendants Peres and Victor contend that they will suffer "spillover prejudice" from a joint trial with their co-defendants, and, as such, their trials should be severed under Federal Rule of Criminal Procedure 14.

### A. *Rule 8(b)*

With regard to Defendant Peres's contention that his trial should be severed on the ground that he was improperly joined in the Indictment, the Court looks for guidance to Rule 8(b) of the Federal Rules of Criminal Procedure. Where, as here, there is both joinder of defendants and joinder of offenses, Rule 8(b) is invoked to test the validity of the joinder. *United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir.1988). The Rule provides:

Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count. Fed.R.Crim.P. 8(b).

In the context of a prosecution for conspiracy, the Second Circuit has consistently explained that "the mere allegation of a conspiracy presumptively satisfies Rule 8(b), since the allegation implies that the defendants named have engaged in the same series of acts or transactions constituting an offense." *United States v. Friedman*, 854 F.2d 535, 561 (2d Cir.1988) (quoting with approval *United States v. Castellano*, 610 F.Supp. 1359, 1396 (S.D.N.Y.1985)), *cert. denied*, 490 U.S. 1004, 109 S.Ct. 1637, 104 L.Ed.2d 153 (1989); *see also United States v. Bernstein*, 533 F.2d 775, 789 (2d Cir.) (conspiracy charge provides a "common link and demonstrates the existence of a common plan" for purposes of Rule 8(b)), *cert. denied*, 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976). More specifically, "the established rule is that a non-frivolous conspiracy charge is sufficient to support joinder of defendants" under Rule 8(b). *United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir.1988) (citing *United States v. Scafidi*, 564 F.2d 633, 642 (2d Cir. 1977), *cert. denied*, 436 U.S. 903, 98 S.Ct. 2231, 56 L.Ed.2d 401 (1978)) (further citation omitted).

Count One of the Indictment in this prosecution clearly alleges a conspiracy in which all Defendants participated. Although Defendant Peres contends that "there is absolutely no evidence linking the Defendant Christopher Peres to the other co-defendants, with the exception of co-defendant Kenny, a lifelong friend" (Peres Mem. at 29), the Government's materials suggest otherwise. First, as the Government correctly notes, Defendant Peres concedes that he rented the premises at 234 Foxhurst Road, where certain contraband was discovered. (*See* Doddato Aff. at ¶ 32.) Secondly, the Government contends that it will demon-

strate at trial that Defendant Peres rented the van that was allegedly used to transport the contraband. (Gov't Mem. at 17.) Based upon these allegations, the conspiracy charge does not appear to be frivolous; and, as noted above, any further examination of the adequacy of the Government's proof at this stage in the proceedings would be inappropriate. *See supra* at 10. As such, Defendant Peres is properly joined in the Indictment under Rule 8(b), and his motion for severance on this ground is denied. *See United States v. Echeverri*, No. 91–CR–885, 1992 WL 81876, at *4 (E.D.N.Y. Mar. 31, 1992).

### B. *Rule 14*

With regard to the contentions of Defendants Peres and Victor that their trials should be severed from that of their co-defendants on the ground of "spillover prejudice," the Court looks to Federal Rule of Criminal Procedure 14. Rule 14 provides, in relevant part, that "[i]f it appears that a defendant . . . is prejudiced by a joinder of . . . defendants . . . for trial together, the court may . . . grant a severance of defendants or provide whatever other relief justice requires."

The United States Supreme Court has explained that "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." *Zafiro v. United States*, —— U.S. ——, ——, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993). The Supreme Court has further held that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* —— U.S. at ——, 113 S.Ct. at 938. Similarly, the Second Circuit has explained that "[t]he principles that guide the district court's consideration of a motion for severance usually counsel denial," and, moreover, "there is a preference, in the federal system, for the joint trial of defendants indicted together. . . ." *United States v. Rosa*, 11 F.3d 315 (2d Cir.1993) (citation omitted),

*cert. denied*, —— U.S. ——, 114 S.Ct. 1565, 128 L.Ed.2d 211 (1994); *see also United States v. Beverly*, 5 F.3d 633, 637 (2d Cir. 1993).

When a defendant claims, as have the Defendants in this case, that his trial should be severed on the ground of "spillover prejudice," the Second Circuit has clearly explained that to establish such a claim, "a defendant must establish more than that he would 'have a better chance of obtaining an acquittal at a separate trial' "; instead, the defendant must show that a "miscarriage of justice" would occur absent separate trials. *United States v. DeVillio*, 983 F.2d 1185, 1192 (2d Cir.1993) (citations omitted). Each Defendant advances an independent ground in support of the proposition that a joint trial will result in spillover prejudice. As indicated below, however, neither of the Defendants has met the heavy burden required for severance.

#### 1. *Motion of Defendant Peres*

First, the Court considers the allegations of spillover prejudice advanced by Defendant Peres. Defendant Peres contends that he will suffer "spillover prejudice" in that the evidence against him is "vastly disproportionate" in comparison with the evidence that will be presented against his co-defendants. (*See* Peres Mem. at 29.) However, "it is well established that 'differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials.' " *United States v. Chang An–Lo*, 851 F.2d 547, 557 (2d Cir.) (citations omitted), *cert. denied*, 488 U.S. 966, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988). Defendant Peres's conclusory allegations regarding disparity in proof have failed to demonstrate that there is a serious risk that a joint trial would compromise one of his specific trial rights, or prevent the jury from making a reliable judgment about guilt or innocence. *Zafiro*, —— U.S. at ——, 113 S.Ct. at 938. Defendant Peres's motion for severance under Rule 14 is, therefore, denied.[6]

---

**6.** In so ruling, the Court also rejects Defendant Peres's remaining arguments for severance.

First, his conclusory contention that "[t]here is little doubt that the jury would have extreme

## 2. Motion of Defendant Victor

Next, the Court considers the Defendant Victor's contentions that he will suffer spillover prejudice. Defendant Victor contends that his trial should be severed on the ground that he will be prejudiced by the admission of evidence regarding Count IV of the Indictment, which charges his co-defendants with certain firearms violations.

■ Courts in this circuit have consistently held, however, that "[a] properly joined defendant is not entitled to a separate trial merely because there will be testimony relating to other criminal activities of his codefendants." *United States v. Jimenez*, 824 F.Supp. 351, 369 (S.D.N.Y.1993) (citations omitted); *see also United States v. Panza*, 750 F.2d 1141, 1149 (2d Cir.1984); *United States v. Lyles*, 593 F.2d 182, 190 (2d Cir.), *cert. denied*, 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979).

■ Moreover, in cases factually similar to the case at bar, courts in this Circuit have consistently held that the joinder of weapons charges with charges involving narcotics and narcotics conspiracy does not result in spillover prejudice. *See, e.g., Jimenez*, 824 F.Supp. at 369; *United States v. Feola*, 651 F.Supp. 1068, 1122–23 (S.D.N.Y.1987) (citations omitted), *aff'd*, 875 F.2d 857 (2d Cir.), *cert. denied*, 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989).

■ Again, to the extent that any evidence regarding the weapons charges will only be admissible against the co-defendants, the Court will instruct the jury in that regard, and will emphasize that each defendant is entitled to have his case determined solely from the evidence admitted against him. *See United States v. Cervone*, 907 F.2d 332, 341–

42 (2d Cir.1990), *cert. denied*, 498 U.S. 1028, 111 S.Ct. 680, 112 L.Ed.2d 672 (1991). Thus, the mere fact that certain evidence may be admissible against his co-defendants but not against Defendant Victor does not establish prejudice sufficient to warrant severance.

## III. Bill of Particulars

The Court next considers the third category of pretrial motions: the requests for particularization. Defendant Peres demands a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure.[7] Peres requests the disclosure of certain information regarding Count One of the Indictment, which alleges that Defendant Peres participated in a conspiracy to import, distribute, and possess with intent to distribute marihuana. (*See* Peres Omnibus Mot. at 2–5.)

■ The purpose of a bill of particulars is " 'to provide defendant with information about the details of the charge against him if this is necessary to the preparation of his defense, and to avoid prejudicial surprise at trial,' " *United States v. Torres*, 901 F.2d 205, 234 (2d Cir.) (citation omitted), *cert. denied*, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990), as well as to enable a defendant to interpose a plea of double jeopardy if subsequently prosecuted for the same offense. *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir.1987) (citations omitted). The Second Circuit has explained that "[g]enerally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *Id.* (citations omitted). Thus, a bill of particulars "should be required only where the charges of the indictment are so general that they do not

---

difficulty in isolating which evidence should be attributed to the co-defendants and not to this Defendant" (Peres Mem. at 30), fails to persuade the Court that the jury will be unable to "collate and appraise the independent evidence against each defendant." *United States v. Kahaner*, 203 F.Supp. 78, 81–82 (S.D.N.Y.1962), *aff'd*, 317 F.2d 459 (2d Cir.), *cert. denied*, 375 U.S. 835, 84 S.Ct. 62, 11 L.Ed.2d 65 (1963). The Court will, however, provide the jury with an appropriate admonitory instruction in this regard. *See id.*

 Secondly, Defendant Peres's reliance on *United States v. Casamento*, 887 F.2d 1141 (2d Cir.

1989), *cert. denied*, 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990), is misplaced. *Casamento* merely suggests that, in lengthy, multi-defendant trials, severance may be warranted. The size and complexity of this trial does not give rise to any such concern. (*See* Gov't Mem. at 17 n. 5.)

7. The Rule provides, in relevant part, that "[t]he court may direct the filing of a bill of particulars." Fed.R.Crim.P. 7(f).

advise the defendant of the specific acts of which he is accused," *Torres*, 901 F.2d at 234 (citations omitted), and "[i]t is not enough that the information would be useful to the defendant; if the defendant has been given adequate notice of the charges against him, the government is not required to disclose additional details about its case." *United States v. Payden*, 613 F.Supp. 800, 816 (S.D.N.Y.1985). The decision to grant or deny a bill of particulars is within the sound discretion of the trial court. *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir.1984).

More specifically, courts in this Circuit have explained when particulars must be provided with respect to allegations of conspiracy. As a general rule, a defendant is not entitled to detailed evidence about a conspiracy to properly prepare for trial. *United States v. Feola*, 651 F.Supp. 1068, 1132 (S.D.N.Y.1987), *aff'd*, 875 F.2d 857 (2d Cir.), *cert. denied*, 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989). For example, details regarding the date on which the conspiracy was formed, or when each participant entered into the conspiracy need not be revealed before trial. *United States v. Persico*, 621 F.Supp. 842, 868 (S.D.N.Y.1985). Furthermore, "[d]efendants are not entitled to discover through a bill of particulars the locations in addition to those listed in the indictment at which they are alleged to have violated the statute, where the information already made available to defendants is sufficient to enable proper preparation for trial and further discovery would amount to an unnecessary revelation of evidence." *Feola*, 651 F.Supp. at 1133 (citation omitted). The Government need not disclose the substance of the conversations and details of agreements between or among co-conspirators, *see United States v. Kahaner*, 203 F.Supp. 78, 84 (S.D.N.Y.1962), *aff'd*, 317 F.2d 459 (2d Cir.), *cert. denied*, 375 U.S. 835, 84 S.Ct. 62, 11 L.Ed.2d 65 (1963); nor is the Government under a duty to disclose the precise manner in which the crimes alleged in the indictment were committed. *United States v. Remy*, 658 F.Supp. 661, 670 (S.D.N.Y.1987). Indeed, "since the Government is not required to charge any overt acts in the indictment," a defendant is not generally entitled to receive information verifying the meetings or activities of the conspirators, or the exact time and place of the overt acts. *Feola*, 651 F.Supp. at 1133. "Similarly, the Government is under no obligation to disclose the specific role played by a defendant in a conspiracy, or the particular acts each defendant is alleged to have participated in, had knowledge of, or for which he is being held responsible." *United States v. Jones*, No. SS85 Cr. 1075, 1986 WL 275, at *2 (S.D.N.Y. May 28, 1986) (citations omitted). Finally, the refusal of a district court to direct the filing of a bill of particulars as to the names of unindicted co-conspirators is not an abuse of discretion. *United States v. Gotti*, 784 F.Supp. 1017, 1018 (E.D.N.Y.1992) (citing *United States v. Torres*, 901 F.2d 205, 233–34 (2d Cir.), *cert. denied*, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990)).

Because Defendant Peres has received adequate information regarding the time, place, and nature of the charged conspiracies, as well as his involvement in the alleged conspiracy (*see* Gov't Aug. 8, 1994 Letter), and in keeping with the reasoning of the cases cited above, Peres's requests with regard to any such specific details are denied.

One remaining request for particularization requires further exploration: Defendant Peres's request for the quantity of controlled substances that he allegedly possessed. (Peres Omnibus Mot. at 5.) As it appears that the Government has made available for inspection the controlled substances at issue and disclosed their approximate weight (*see* Russo Aug. 26, 1994 Letter), the Court finds that Defendant Peres has been provided with adequate information in this regard. Moreover, the statutory provision under which Defendant Peres is charged provides additional notice of the approximate quantity of drugs at issue. *See* 21 U.S.C. § 841(b)(1)(B)(vii). Therefore, Defendant Peres's demand for particulars with respect to the quantity of illegal substances is likewise denied.

To the extent that the Court has not addressed a specific request for particulars, such request is also hereby denied.

## IV. Motions to Suppress

The Court next turns to Defendants' motions regarding the suppression of certain evidence that is sought to be introduced at trial. Defendants seek to suppress three general categories of evidence, each of which is addressed separately below.

### A. Search of Defendant Victor's Boat

First, the Court considers Defendant Victor's motion to suppress the physical evidence seized during the warrantless search of his boat. The Government contends that the warrantless search was authorized by 19 U.S.C. § 1581(a), which provides, in pertinent part, that

> [a]ny officer of the Customs may at any time go on board of any vessel ... at any place in the United States or within the customs waters ... and examine the manifest and other documents and papers and examine, inspect, and search the vessel ... and every part thereof and any person, trunk, package, or cargo on board....

Defendant Victor contends that Section 1581 is inapplicable to this case. More specifically, he contends that his boat was not a "vessel" within the meaning of Section 1581.[8] (Russo Feb. 9, 1995 Letter at 2.)

■ Section 1581 "imparts an obviously broad grant of authority to Customs officials." *United States v. Manbeck*, 744 F.2d 360, 382 (4th Cir.1984), *cert. denied*, 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985). This broad authority, however, "must be interpreted in a manner consistent with the limitations imposed by the Fourth Amendment." *Id.* Generally, in determining whether a search or seizure runs afoul of the Fourth Amendment, the Court must examine the " 'reasonableness' of the type of governmental intrusion involved." *United States v. Villamonte–Marquez*, 462 U.S. 579, 588, 103 S.Ct. 2573, 2579, 77 L.Ed.2d 22 (1983). More

particularly, when reviewing the a search or seizure of a vessel, the Supreme Court has explained that, in determining "reasonableness," courts must take into account the concerns implicated by "vessels located in waters offering ready access to the open sea." *Id.* Applying this reasoning, the Supreme Court, in *Villamonte–Marquez*, found that Customs Agents had not violated the Fourth Amendment when, without any suspicion of wrongdoing, they boarded and conducted a document inspection of a vessel that was anchored in a waterway approximately 18 miles inland from the gulf coast.

■ Defendant Victor contends that, unlike the vessel in *Villamonte–Marquez*, the vessel at issue in this case did not have "ready access to the open sea," in that (1) the vessel was secured to a dock, (2) Defendant Victor, the owner of the vessel, was "in custody many yards away," and (3) "more than a dozen agents were on the scene."[9] (Russo Feb. 9, 1995 Letter at 2–3.) None of these circumstances, however, persuades the Court that the boarding of the vessel violated the Fourth Amendment. First, Defendant Victor has provided no support for the proposition that the mere docking of a boat deprives it of access to the open sea. Indeed, one Circuit has specifically explained that the mooring of a boat is irrelevant to a determination of the reasonableness of the boarding of a vessel. *United States v. One 1972 44' Striker*, 753 F.2d 867, 868 (11th Cir.1985) (court rejected argument that *Villamonte–Marquez* does not apply to docked vessels, explaining that "[n]o such limitation is found in *Villamonte–Marquez*; the mooring to a private dock is not important; it is access to the open sea that is determinative"); and a number of other courts have also upheld the boarding of vessels that had been secured to a dock. *See, e.g., United States v. Throckmorton*, 784 F.2d 1003, 1005 (9th Cir.1986); *Manbeck*, 744 F.2d at 369, 383–84; *United*

---

**8.** Defendant Victor thus contends that the Court is only presented with a "narrow issue": "When does a vessel cease to be a vessel for the purposes of § 1581(a) boarding?" (Russo Feb. 9, 1995 Letter at 2.–3.) In his initial moving papers, however, it appeared that Defendant Victor was also challenging the subsequent search of the vessel. If Defendant does so contest the search,

he should raise such issue with the Court at the May 1, 1995 hearing.

**9.** Defendant Victor does not contend that the vessel was deprived of access to the open sea in any manner other than those enumerated in the text.

*States v. Bain,* 736 F.2d 1480, 1487–88 (11th Cir.), *cert. denied,* 469 U.S. 937, 105 S.Ct. 340, 83 L.Ed.2d 275 (1984); *United States v. One Blue Lobster Vessel,* 639 F.Supp. 865, 870 (S.D.Fla.1986); *United States v. One Defender Lobster Vessel,* 606 F.Supp. 32, 37 (S.D.Fla.1984).

■ Moreover, that Defendant Victor, the owner of the boat, was handcuffed, and that numerous officers were present on the scene, do not demonstrate that the boat was deprived of access to the open sea. First, as indicated by the cases above, it appears that the determination of whether a vessel has such "access" merely turns upon its location, and does not involve an examination of potential practical impediments to its movement. *See, e.g., One 1972 44' Striker,* 753 F.2d at 868; *Throckmorton,* 784 F.2d at 1005. Moreover, courts have repeatedly upheld boardings where Customs Officers did not believe that anyone in control of the vessel was in the vicinity. *See, e.g., One Blue Lobster Vessel,* 639 F.Supp. at 867 (upholding boarding of vessel after those on board had left the area); *One Defender Lobster Vessel,* 606 F.Supp. at 34 (upholding boarding where agents had no reason to believe that the owners or others capable of moving the vessel were in the area). Finally, that the owner had been apprehended does not preclude the possibility that other individuals—either on the boat or in the surrounding area—could maneuver the boat into the open sea.[10] *Cf. United States v. Ader,* 520 F.Supp. 313, 328 (E.D.N.C.1980) (upholding warrantless search of vessel where suspects had been arrested and area secured, on grounds that there was a "possibility that others involved, but not present, might threaten the destruction of evidence" and that "the officers could not be certain that all participants had been apprehended"). Based upon the rationale of the cases cited above, the Court finds that the boarding of the vehicle was constitutionally permissible; and therefore, Defendant Victor's motion to suppress the evidence recovered from his boat is denied.

### B. Search of 234 Foxhurst Road

Next, the Court considers the motions of Defendants Peres and Kenny to suppress the physical evidence seized from the premises located at 234 Foxhurst Road.[11] As each Defendant has advanced independent grounds for suppression of this evidence, their motions are addressed separately below.

### 1. Motion of Defendant Kenny

First, the Court considers the motion of Defendant Kenny, which seeks suppression of the evidence on the ground that "the search warrant may have been issued without full disclosure of all known information to the presiding magistrate." (Kenny Mem. at 11.) Defendant Kenny requests that the Court conduct a hearing in this regard pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Even assuming, however, that Defendant Kenny has standing to contest the search of the premises,[12] his motion is denied at this time.

■ The law is clear that, to obtain a hearing on the veracity of a statement in a search warrant affidavit, a defendant must make a "substantial preliminary showing"

---

10. Indeed, at the time of boarding, at least one individual identified by the anonymous caller as being involved with the alleged criminal activity, Ed Kenny, a/k/a "Dale Peterson," apparently had not been apprehended.

11. Defendant Deciantis has also moved to suppress the evidence seized at the premises. Defendant Deciantis contends that any such evidence is "fruit of the poisonous tree," in that the search was a product of his illegal arrest and interrogation. (*See* Deciantis Mem. at 1.) Following the May 1 hearing regarding his arrest and detention, *see infra* at 876–877, the Court will rule upon Defendant Deciantis's motion to suppress the evidence found at the premises.

12. Although the Government contends that Defendant Kenny lacks standing (*see* Gov't Mem. at 14), the affidavit in support of the search warrant indicates that Defendant Kenny was "staying in a house on Foxhurst Road" (Wisall Aff. at ¶ 8), and Defendant Kenny's post-arrest statement indicates that the premises had been rented on his behalf. (Hochheiser Aff. Ex. C at 4.) The Court notes, however, that Defendant Kenny's Affidavit, which was submitted in support of his motions, indicates that he resided in his mother's home. (Kenny Aff. at ¶ 6.) There is, therefore, considerable dispute as to whether Defendant Kenny has standing to contest the search of the premises.

that (1) a false statement or omission was knowingly and intentionally, or with reckless disregard for the truth, included in the warrant affidavit, and (2) the allegedly false statement or omission was necessary to the finding of probable cause. *See United States v. Mankani*, 738 F.2d 538, 545 (2d Cir.1984); *see also Franks*, 438 U.S. at 171–72, 98 S.Ct. at 2684–85.

▇ Defendant Kenny contends that a hearing is required in this case because law enforcement agents actually knew the identity of the "anonymous caller," but failed to disclose the caller's identity. However, even if the Court were to assume that the agents were aware of the caller's identity,[13] Defendant Kenny has submitted no support for the proposition that the disclosure of the caller's identity would have altered the Magistrate Judge's determination of probable cause. A substantial portion of the information provided by the anonymous caller was corroborated by the agents, and, as such, the Magistrate Judge was able to adequately assess the reliability of the caller; and Defendant Kenny has not explained why identification of the caller would have led to a contrary result. *Cf. United States v. Wells*, Crim.A. No. 88–87–01, 1989 WL 252841, at *4–5 (D.Vt. Jan. 30, 1989). As Defendant Kenny has failed to make a "substantial preliminary showing" that an alleged falsity or omission would have affected the determination of probable cause, his motion for a *Franks* hearing on this ground is denied.

▇ In the alternative, Defendant Kenny contends that the Court should dispense with the requirement that the defense must make a "substantial preliminary showing" of material falsity to obtain a *Franks* hearing, in light of Defendant Kenny's allegations re-

garding the Government's conduct during his interrogation. In essence, Defendant Kenny contends that because the Government acted egregiously in obtaining his statement, the Court may assume that the Government also acted egregiously—by making material false statements or omissions—in obtaining the search warrant. Defendant Kenny has failed to submit any caselaw in support of the proposition that the Court may disregard the requirement of a "substantial preliminary showing" and award a *Franks* hearing on the basis of unsupported assumptions. As such, Defendant Kenny's motion for a *Franks* hearing on this ground is also denied. The Court notes, however, that if the evidence elicited at the hearing with regard to the Government's conduct during the interrogation provides support for Defendant Kenny's contention that there were material omissions or falsities in the warrant affidavit, Defendant Kenny may renew his motion for a *Franks* hearing.[14]

### 2. *Motion of Defendant Peres*

▇ Next, the Court considers the motion of Defendant Peres. Defendant Peres first contends that the search warrant for the premises, which was signed by Magistrate Judge Orenstein, was not supported by probable cause.[15] In order to suppress evidence seized pursuant to a search warrant, a defendant must demonstrate that (1) there was inadequate probable cause to support the issuance of the warrant, and (2) even if the warrant was invalid for lack of probable cause, the officers who obtained and executed the warrant failed to act in an objectively reasonable fashion. *See United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *United States v. Love*,

---

**13.** The Government represents that, "[c]ontrary to Kenny's allegation, the agents do not know the anonymous caller's identity." (Gov't Mem. at 14 n. 4.)

**14.** Similarly, if, following the hearing, the Court finds that the interrogation was in violation of Defendant Kenny's constitutional rights, the Court will consider Defendant Kenny's motion to suppress on the ground that the search of the premises was "fruit of the poisonous tree." (*See* Hochheiser Aug. 12, 1994 Letter.)

**15.** Although Defendant Peres has failed to submit an affidavit based upon personal knowledge regarding his standing to contest the search of the premises, *see United States v. Sierra–Garcia*, 760 F.Supp. 252, 264 (E.D.N.Y.1991), his counsel's affidavit states that Defendant Peres "was a lawful resident of th[e] premises and in fact had been living there for some time prior to the search" (Doddato Aff. at ¶ 32(b)), and, moreover, the Government concedes that Defendant Peres has standing to contest the search. (Gov't Mem. at 14.)

859 F.Supp. 725, 733 (S.D.N.Y.1994), *aff'd sub nom. United States v. Roberts,* 41 F.3d 1501 (2d Cir.1994).

### a. *Probable Cause*

 The Court first considers whether there was sufficient probable cause to issue the warrant. In reviewing an application for a search warrant, the magistrate judge must determine whether, given the "totality-of-the-circumstances," (1) a crime has been committed, and (2) there is probable cause to believe that evidence of such crime would be found at the identified location. *See Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. Travisano,* 724 F.2d 341, 346 (2d Cir.1983). It is well established that a Magistrate Judge's finding of probable cause is entitled to substantial deference. *Love,* 859 F.Supp. at 733 (citing *Travisano,* 724 F.2d at 345). The District Court is required, however, to determine "whether 'the magistrate performed his neutral and detached function on the facts before him, and did not merely serve as a rubber stamp for conclusions drawn by the police.'" *Id.* (quoting *Travisano,* 724 F.2d at 345).

 The affidavit submitted in support of the search warrant in this case provided Magistrate Judge Orenstein with sufficient probable cause for the issuance of the warrant. The affidavit explains that an anonymous caller set forth detailed information regarding the operation of the alleged conspiracy, its members, and the contraband that would be found at the premises. Significant portions of this information were corroborated by Customs agents and Nassau County police officers. The affidavit also contained information from two cooperating witnesses, both of whom corroborated the statements of the anonymous caller and provided additional information with regard to the alleged conspiracy and the contraband that would be found at the premises.[16] This information, given the totality of the circumstances, clearly established a fair probability that the objects sought in the warrant would be found at the identified location.[17] *See Travisano,* 724 F.2d at 346. As such, Defendant Peres's motion to suppress the physical evidence on the ground that there was insufficient probable cause is denied.

### b. *Good Faith*

 Even if the Court were to find that there was insufficient probable cause to support the issuance of the warrant, Defendant Peres has failed to allege that the officers who obtained and executed the search failed to act with objective good faith. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Defendant Peres does not allege that the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *id.* at 923, 104 S.Ct. at 3420 (quoting *Brown v. Illinois,* 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (Powell, J. concurring) (1975)); nor does he contend that the warrant was so "facially deficient" that the executing officers could not have presumed it to be valid. *Id.* As such,

---

**16.** In light of this corroboration by both the agents and the cooperating witnesses, the Magistrate Judge properly found that the information provided by the anonymous caller was reliable; and, contrary to the argument advanced by Defendant Peres (*see* Doddato Aff. at ¶ 32(d)), the indicia of the informant's reliability were not "equally as consistent with innocent knowledge as with guilty knowledge." (*See* Wisall Aff. at ¶¶ 6, 10.)

**17.** In so concluding, the Court rejects Defendant Peres's contention that the application for the warrant failed to meet the "particularization requirement" in that it "lack[ed] any allegation whatsoever concerning the presence of firearms in the premises." (Doddato Aff. at ¶ 32(d).) The affidavit in support of the warrant clearly states that the anonymous caller indicated that "the persons involved in the conspiracy are armed." (Wisall Aff. at 3 n. 2.) This information, when coupled with the other information regarding the alleged narcotics activity, provided the Magistrate Judge with probable cause to believe that weapons would be found at the premises. *See United States v. Alexander,* No. 92 CR. 220, 1993 WL 97407, at *7 (S.D.N.Y. Apr. 1, 1993). Even if there were insufficient probable cause with regard to these items, however, as discussed below, the items need not be excluded at this juncture, for Defendant Peres has failed to allege that the officers acted unreasonably. *See infra* at 875–876; *see also United States v. Riley,* 906 F.2d 841, 845–46 (2d Cir.1990).

Defendant Peres's motion to suppress must fail.[18]

### C. *Post–Arrest Statements and Search of Defendant Kenny's Room, Safe Deposit Box, and Bank Account*

Finally, the Court considers the motions of Defendants Kenny, Deciantis, and Peres for the suppression of certain statements made following their arrests, as well as the motion of Defendant Kenny for the suppression of certain physical evidence seized from his room in his mother's home, his safe deposit box, and his bank account. On May 1, 1995, the Court will conduct a hearing with regard to the relevant circumstances surrounding these arrests, interrogations, and searches.

## V. *Discovery*

The final category of pre-trial motions advanced by the Defendants is for discovery. Defendant Peres moves for discovery of certain materials pursuant to Federal Rule of Criminal Procedure 16. (*See* Peres Omnibus Mot. at 5–15.) The Court notes that Local Criminal Rule 3(d) provides, in relevant part, that:

> No motion [for discovery] shall be heard unless counsel for the moving party files with the court simultaneously with the filing of the moving papers an affidavit certifying that said counsel has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issue raised by the motion without the intervention of the court and has been unable to reach such an agreement.

No such statement appears in the affidavit of Peres's counsel, and it does not appear that any such attempt at resolution has been pursued. (*See* Gov't Mem. at 18.) Thus, in light of the requirements of Rule 3(d), as well as the Government's representation that it "is aware of and has complied with its obligations under Rule 16" (Gov't Mem. at 18), Defendant Peres's motion for discovery is denied at this time.[19]

### Conclusion

For the reasons set forth above, the Court grants Defendants' motions for hearings with regard to the suppression of certain post-arrest statements and physical evidence recovered from Defendant Kenny's room, safe deposit box, and bank account. The motion for a hearing with regard to allegedly outrageous government conduct is likewise granted. All remaining motions are denied. The hearings will be held on May 1, 1995.

SO ORDERED.

---

**18.** The *Leon* Court also noted that this "good faith exception" would not apply where the officers misled the Magistrate Judge with falsities or material omissions, as prohibited by *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). *Leon*, 468 U.S. at 923, 104 S.Ct. at 3420. Although Defendant Peres has not alleged that the standard set forth in *Franks* has been violated, Defendant Peres has requested permission to join in any applicable motions of his co-defendants (Doddato Aff. at ¶ 34); and Defendant Kenny has asserted that the warrant application violated the strictures of *Franks*.

Defendant Kenny's request for a *Franks* hearing has, however, been denied at this time, and,

as such, at this time, the Court finds that the warrant satisfies the good-faith exception.

**19.** Defendant Peres has also filed a motion for a hearing pursuant to *Luck v. United States*, 348 F.2d 763 (D.C.Cir.1965), regarding the permissible scope of cross-examination with regard to his prior convictions for possession of a hypodermic instrument. (Doddato Aff. at ¶ 33.) As the Government represents that it "has no intention" of introducing such convictions at trial (Gov't Mem. at 18–19), no such hearing is required at the present time. Defendant's motion for a *Luck* hearing is, therefore, denied.